Filed: 3/31/2023 1:39 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 74219819
By: Lisa Kelly
3/31/2023 3:27 PM

CAUSE NO. 23-CV-0488

| | | |
|---|---|---|
| 3M COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL B. MARTIN and<br>MARTIN WALTON LAW FIRM,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br>GALVESTON COUNTY, TEXAS<br><br><br>Galveston County – 10th District Court |

SUPPLEMENTAL

**VERIFIED PETITION FOR AUTHORIZATION TO**
**CONDUCT RULE 202 PRE-SUIT DEPOSITIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

Petitioner 3M Company ("3M") files this Verified Petition for Authorization to Conduct Rule 202 Pre-Suit Depositions (the "Petition") for the purpose of investigating a potential claim or suit. Specifically, 3M asks the Court for permission to take depositions of Respondents Michael B. Martin ("Martin") and a corporate representative of Martin Walton Law Firm ("Martin Walton") and to serve Martin and Martin Walton with a deposition notice requiring the production of documents via subpoena duces tecum.

## I.
## PARTIES

1. 3M is a corporation organized under the laws of Delaware with its principal place of business in Minnesota.

2. Michael B. Martin is an individual who resides and maintains a law office in Galveston County, Texas. He may be served with process at 1308 Greenbriar Dr., Friendswood, Texas 77546.

EXHIBIT C

3. Martin Walton is a limited liability partnership organized under the laws of the State of Texas, registered to do business in Texas, and with its principal place of business located in Galveston County, Texas. Martin Walton may be served with process at 699 S. Friendswood Drive, Suite 107 Houston, Texas, in Galveston County, Texas.

## II.
## JURISDICTION

4. This Court has jurisdiction over this matter because, among other things: (1) the conduct that forms the basis of the potential claims that 3M needs to investigate relates to conduct and business activities that occurred in Galveston County, Texas; (2) the potential claims that 3M may have against Martin and Martin Walton are for an amount within the jurisdictional limits of this Court; (3) Martin resides in Galveston County; and (4) Martin Walton's principal office is located in Galveston County, Texas.

## III.
## VENUE

5. Venue is proper in Galveston County pursuant to Texas Civil Practice and Remedies Code § 15.002 and Texas Rule of Civil Procedure 202.2 because Martin resides in Galveston County, Texas, and Martin Walton's principal office is in Galveston County, Texas.

## IV.
## GROUNDS FOR PETITION

6. Martin is a licensed attorney who has practiced in Texas for over 35 years and is a member of Martin Walton. He claims to have represented hundreds of plaintiffs suffering from occupational lung diseases, such as silicosis and coal workers' pneumoconiosis, or "black lung,"

and advertises that he specializes in respirator (or dust mask) product liability claims.[1] Glenn Hammond is an attorney based in Pikeville, Kentucky, and has his own firm, Glenn Martin Hammond Law Office. Hammond has no history of prosecuting respirator product liability cases. Rather, he focuses on workers' compensation, social security disability, personal injury and other claims. Johnny Givens is an attorney based in Mississippi who previously worked at a firm practicing product liability litigation, and as of July 2019, opened his own firm to focus specifically on respirator claims—in particular, dust mask liability claims against 3M.

**Mike Martin**

7. Martin has a documented history of pursuing fraudulent cases against 3M and—once caught—leaving his unwitting clients to pick up the pieces, looking out only for himself. In 2002, Martin was hired to file silicosis claims against 3M on behalf of a client, Clark Kirkland, who had been diagnosed with silicosis injuries the year prior. On the eve of the statute f limitations expiring, Martin overnighted a complaint for filing in Georgia state court—despite not being licensed to practice in Georgia or seeking the court's permission to file. After Martin missed the statute of limitations, the Georgia court directed Martin to dismiss the suit, which he did a few days later. Martin then concealed the Georgia dismissal from his client and waited nine months, long after the statute of limitations had expired, to re-file the case. Martin's client, Kirkland, alleged that Martin then suggested that Kirkland lie about when he discovered his injury which prompted Kirkland to report Martin's misconduct to U.S. District Judge Janis Jack of the Southern District of Texas.

[1] The 3M products at issue in these actions are government certified and approved respirators; however, for the purposes of this application they will be referred to as "dust masks," the term widely used by coal miner plaintiffs and the lawyers who represent them.

8. Martin then took steps to conceal his misconduct—first seeking to withdraw from the case (which Judge Jack denied), and second, moving to dismiss Kirkland's claim (without his client's knowledge or consent), claiming that Kirkland in fact had not worn a respirator when exposed to silica. *See* Ex. 2, *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 642–43 (S.D. Tex. 2005). Judge Jack declined to rule on the motion to dismiss and ordered Martin to appear for a court-monitored deposition regarding Kirkland's claim against 3M and his allegations against Martin. *Id.* at 643. As Judge Jack wrote in her opinion chastising Martin for putting his own interests over those of his client, during the deposition, Martin "succumbed to the urge to torpedo his client's case" by attempting "to show Mr. Kirkland's suit would have been time-barred prior to Mr. Martin's engagement." *Id.* at 644. Kirkland then successfully sued Martin for legal malpractice and obtained $150,000 in damages.[2]

9. In another claim against 3M a few years later, U.S. District Judge Marian Payson of the Western District of New York chastised Martin for his cavalier treatment of the court's orders. Judge Payson sanctioned Martin and found that attorneys' fees were warranted for Martin's "obvious disregard of his obligations."[3]

**<u>The Current Scheme</u>**

10. As early as 2016, attorney Glenn Hammond began to solicit current and former coal workers in and around Pikeville, Kentucky, as potential clients to bring dust mask claims against 3M. Hammond first solicited his prior clientele—coal workers who had filed (successfully or unsuccessfully) workers' compensation or social security claims alleging a black lung diagnosis. Many of those compensation claims were filed decades ago. The solicitation then expanded to

[2] *See Kirkland v. Martin*, No. 4:10-CV-2865, 2012 WL 3930318, at *3 (S.D. Tex. Sept. 10, 2012).

[3] *See Coene v. 3M Co.*, No. 10-CV-6546G, 2015 WL 5513323, at *4 (W.D.N.Y. Sept. 16, 2015).

reach other individuals in Kentucky who had previously worked in a mine. By early 2020, long after many of those claims had expired under Kentucky's one-year statute of limitations, Martin and (and then later Givens) joined Hammond in suing 3M in Kentucky courts.

11. Martin, Hammond, and Givens did not vet the claims before filing them against 3M. Instead, Hammond, Martin, and Givens relied on employees who were not licensed to practice law and with no experience in respirator liability claims to conduct "case intakes." In some instances, Hammond encouraged people he knew to sign up for a dust mask claim and coached them prior to coming to his office for an intake to lie about their mask usage, for example, instructing them to say they always used a 3M mask and wore a mask 100% of the time they worked in the mine. In other instances, Hammond joined an ongoing intake and encouraged the individual to tell the same lie—reassuring them that no one could prove they never wore a mask decades ago.

12. During intake, clients signed a contract for attorney fees providing that Hammond would receive up to 40% of any award obtained from 3M on that individual's behalf. Hammond, Martin, and Givens agreed separately to split the award amongst themselves.

13. Glenn Martin Hammond Law Office sent Martin, at his office in Texas, electronic copies of case files for each Hammond, Martin, Givens client. *See* Ex. 1 (Motion to Stay Hammond Law Offices Dust Mask Cases (Mar. 23, 2023) ("Mot. to Stay")), ¶ 1.

14. Between March 2020 and January 2023, Martin, Hammond, and Givens collectively filed and/or prosecuted 19 complaints in Kentucky asserting more than 850 claims against 3M on behalf of coal workers or their estates. Each alleged that the claimants had suffered from black lung, used a 3M mask to protect themselves from exposure to coal dust while working

in coal mines, and did not know of their injury or that it was allegedly caused by the supposedly defective 3M mask more than one year before filing their claim.

15. Martin, Hammond, and Givens filed and/or prosecuted claims on behalf of virtually every coal worker that went through the intake process at Hammond's firm—regardless of whether they had a meritorious, or even colorable, claim. The attorneys filed and prosecuted claims on behalf of clients whom they affirmatively knew—based on the intake process and/or the individual's records from a prior claim—had never been diagnosed with black lung, never wore a mask while working in the mine, and/or did not use a mask made by 3M. They also filed claims on behalf of coal workers who had signed up as dust mask clients years earlier and whose claims were far outside the applicable one-year statute of limitations when filed. Martin, Hammond, and Givens also filed and prosecuted claims on behalf of deceased coal workers whom they knew had died (and who had an administrator assigned to their estate more than two years before a complaint was filed), such that the applicable statute of limitations on their claim had unquestionably expired.

16. In January 2023, Martin admitted in a written communication that he knew many of the claims brought by Hammond, Givens, and Martin against 3M were "frivolous." Until Hammond's false affidavit (drafted in large part by Martin) was found to have been materially false by a Kentucky judge, as described further below, Martin did nothing to try to address this fact—indeed, he permitted new cases to be filed under his name by Hammond.

17. Martin, Hammond, and Givens prosecuted fraudulent claims against 3M as part of an ongoing scheme to drive up 3M's litigation costs and force larger settlements. These attorneys knew that by increasing the inventory of cases filed against 3M, they were increasing the amount of money 3M would have to spend defending the cases and the risk exposure 3M would assign to the case inventory—thereby increasing the pressure on 3M to settle cases.

18. The motive for bringing and prosecuting these fraudulent claims was threefold: (1) if the fraud went undetected, Martin, Givens, and Hammond stood to recoup a percentage of settlements or court awards for the fraudulent cases; (2) they could use the cases as "bargaining chips" in settlement negotiations with 3M; and (3) even if the fraudulent claims were uncovered in the future, they would have already served the purpose of driving up settlement values.

19. To conceal the fraudulent claims and the underlying scheme, Martin, Hammond, and Givens prepared and served interrogatory responses on behalf of certain clients that contained false statements about the client's mask usage and the type of mask used. 3M is aware that Givens instructed at least one client to lie in a deposition about his claims. And, in numerous cases, when a client's deposition drew near, Martin, Hammond, and Givens canceled the deposition days before it was scheduled then dismissed the case and lied to some of their clients about the reason for dismissing the case—. To date, Martin, Hammond, and Givens have dismissed 16 of the 53 claims from their initial March 2020 complaint alone. Martin, Hammond, and Givens knew at the time that at least several of those dismissed claims (initially filed by Hammond and later joined by Martin and Givens) were fraudulent.

20. On February 17, 2023, Martin, Hammond, and Givens moved to dismiss *without prejudice* 44 additional claims (out of 470 total clams) from the second, third, and fourth complaints that they had filed in early 2021. In those motions (filed in multiple courts), Martin, Hammond, and Givens admitted that ***none*** of the 44 claimants as to which their motions were filed had been diagnosed with black lung at the time their claim was filed—despite representing in the complaints that each suffered from this disease, showing that neither Martin, Hammond, nor Givens had engaged in pre-suit investigation required under Kentucky law and the rules of professional responsibility. When 3M opposed and requested a hearing about the request to enter

dismissals without prejudice, Martin, Hammond, and Givens reversed course, sought to withdraw their motions to dismiss to avoid judicial scrutiny into their knowledge that the claims were false, and chose to continue prosecuting claims they had just weeks earlier ***admitted were invalid in judicial filings***.

21. On March 9, 2023, a judge presiding over one of the dust mask claims filed by Martin, Hammond, and Givens in Pike County, Kentucky, granted a motion for summary judgment in favor of 3M, dismissing one of their earlier-filed fraudulent claims—*Wilson v. 3M Company*, No. 22-CI-812 (Pike Cir. Ct.) ("*Wilson*")—on statute of limitations grounds. The statute of limitations in Kentucky is one year, and for a latent injury, the statute runs when the plaintiff "knew *or should have known*" of his injury and that the defendant's conduct "*may*" have caused it. In opposing summary judgment, Hammond, Martin, and Givens submitted an affidavit from Wilson, as well as one drafted by Hammond and Martin, and signed by Hammond.

22. The judge initially denied the motion but 3M raised sufficient suspicions as to the veracity of Hammond's and his client's affidavits in opposition that the court ordered Hammond's deposition about the issue and particularly the affidavit Martin and Hammond submitted to defeat the statute of limitations. During his deposition, where Martin served as Hammond's counsel, Hammond lied under oath and stated that he had not even heard about dust mask cases until "around that timeframe" that he claimed to have taken Mr. Wilson as a client—February of 2020. *See* Ex. 4, G. Hammond Dep. Tr. (Mar. 18, 2022) 126: 6–11. This foundational lie was intended to overcome 3M's statute of limitations defense for many cases in which their clients met with Hammond, Martin, or Givens more than one year prior to their complaints being filed. Hammond's under-oath statement is unquestionably perjurious, as 3M can prove that Hammond began conducting case intakes for dust mask cases ***no later than 2016***.

23. Hammond's lies were so palpable that the judge expressly stated, "3M Company has conclusively shown that Mr. Hammond's Affidavit was materially false."

24. Martin ***perpetuated*** Hammond's lies in filings and statements to the court. Specifically, even ***after*** 3M had disproven Hammond's affidavit at Hammond's deposition and had made a detailed presentation outlining the falsity of the affidavit (which the judge agreed with in his ruling), Martin represented to the court that the affidavit was "good and sound." In other words, the falsity of Hammond's affidavit was unquestionably clear to the court on the record at that time, yet Martin ***continued*** to back the lies.

25. After the court's ruling on March 9, 2023, as scrutiny began to mount, Martin and Givens tried to pin the blame for Hammond's false statements in *Wilson*, and their collective scheme, solely on Hammond. On March 24, 2022, Martin ***acknowledged fraud in the Wilson case and acknowledged that fraud may have occurred in other cases in which he was counsel***. *See* Ex. 1 (Mot. to Stay). 3M is aware that fraud did indeed occur in other cases co-counseled by Martin, Hammond, and Givens. Seeking to distance themselves, Martin and Givens filed motions in a Kentucky circuit court seeking to stay **hundreds** of dust mask cases they are co-counseling with Hammond, on the basis that these hundreds of claims could be potentially fraudulent. *See id.*

26. In that motion, Martin and Givens claimed that during a visit to Hammond's firm on March 16, 2022, they "discovered documents that neither Mr. Martin nor Mr. Givens had previously seen" that "***confirmed that the Hammond affidavit [filed in Wilson] was materially false***." *Id.* ¶ 2 (emphasis added). Martin and Givens further claimed that "[p]rior to this discovery, neither Mr. Martin nor Mr. Givens were aware of a paper file for Mr. Wilson" and upon further inquiry, discovered a room in Hammond's office containing other hard copy files pertaining to other clients with dust mask claims, which included individual client intakes and contingency

contracts (presumably revealing the date on which the client first contacted and retained Hammond for purposes of filing a dust mask case). *Id.* ¶¶ 2–3. Martin and Givens explain that this "created a concern" for them and it soon became apparent they could not review all the files because there were ***so many*** containing potentially damning evidence. *Id.* ¶¶ 4–6. As such, Martin stated that the potentially damning files would be "copied and then forwarded" to Martin in Texas by Hammond. *Id.* ¶ 7.

27. Martin and Givens told the Kentucky judge that they expect these files, which they say will be sent to Martin in Texas, will show that other Kentucky cases filed and prosecuted by Martin, Givens, and Hammond could be fraudulent:

> Because of the ***disturbing facts*** discovered in the Wilson case, the undersigned Plaintiffs' counsel move to stay this litigation. Mr. Martin and Mr. Givens believe in good faith that ***material information relating to the statute of limitations may have been concealed*** by Hammond in other cases.

*Id.* ¶ 10 (emphasis added).

28. And while Martin claims in his recent motion that he was "unaware" of Hammond's fraud, evidence ***in Martin and Givens' own files*** and Martin's history contradicts that claim. For example, a coal miner named Matthew Baldridge was a plaintiff in the same complaint that contained the fraudulent *Wilson* claim. Hammond had represented Baldridge in a prior workers' compensation claim, for which Baldridge sat for a deposition on June 20, 2018. During that 2018 deposition—21 months prior to any dust mask claim being filed on his behalf—Baldridge testified that he had hired Hammond to file a dust mask claim against 3M and believed that Hammond had already filed that claim in Pike County Circuit Court:

> **Q.** I only have one claim for you and that is the claim for your lungs in connection with coal workers' pneumoconiosis. Have you filed any other claims against Excel Mining since your last day of Work?
>
> **A.** No. Well, like I said, just dust mask.

**Q.** So you have filed a dust mask case?
**A.** Yeah.
**Q.** Any other case?
**A.** No.
**Q.** Where did you file your dust mask case?
**A.** Here.
**Q.** In Pike County?
**A.** Yes.
**Q.** Do you know who you filed it against?
**A.** I just filed on the dust mask.
**Q.** Was it against 3M?
**A.** I think so, yeah.
**Q.** Have you had any type of examinations in connection with that case?
**A.** No.
**Q.** Who is your counsel in that case?
**A.** This place.
**Q.** Glenn Hammond's office?
**A.** Yes.

*See* Ex. 3, M. Baldridge Dep. Tr. (June 20, 2018), 15:23–16:21.

29. This 2018 deposition transcript was produced in discovery in Baldridge's case in or around February 2021—***after*** Martin and Givens filed appearances in Baldridge's case on May 19, 2020, and October 19, 2020, respectively. Therefore, Martin and Givens had in their possession all the evidence they would have needed to see that Baldridge's claim was ***knowingly*** filed outside the limitations period. They did not need any paper files in Hammond's office to "discover" the fraudulent claim. Moreover, when Hammond was deposed on March 18, 2022 about the false affidavit he submitted in the *Wilson* case, counsel for 3M read into the record—***with Martin present***—the exact portion of Matthew Baldridge's testimony copied above, stating that Baldridge had retained Hammond to file a dust mask suit on his behalf at least as of 2018. *See*

Ex. 4, G. Hammond Dep. Tr. (Mar. 18, 2022) 123:11–125:8. Still, Martin did not alert the court that Matthew Baldridge's claim was fraudulent, or at least invalid, much less investigate whether other claims were filed outside of the statute of limitations. Nor did he correct Hammond's false statement that Hammond had not heard about dust mask claims until 2020. Instead, Martin later caused Baldridge's claim to be dismissed based on ***another false statement*** to the court: that Matthew Baldridge was "not presently diagnosed" with black lung disease even though Baldrige had been diagnosed in 2018 (and testified about his diagnosis in June 2020). *See January 13, 2022 Motion to Dismiss.* In Judge Jack's words, recognizing that fraud had been discovered, Martin "succumbed to the urge to torpedo" his client.

30. Martin has told other lies to cover up the scheme. In the same deposition of Hammond discussed above—***with Martin present and engaged as counsel***—Hammond testified about the hard copy paper files he keeps in his office—***the same paper files Martin claims in his motion to stay that he never knew about.*** Specifically, during the deposition, Hammond stated that he "discussed with Mr. Martin what records [his] office has" and "provided everything to [Martin]" prior to the deposition. *Id.* at 7:15–8:7. Included in the files provided by Hammond to Martin were hard copy, handwritten notes from "a physical file for Mr. Wilson." *Id.* at 86:1–17. In other words, Martin knew all about the hard copy files in Hammond's office in ***March 2022***, despite filing an affidavit on March 24, 2023 saying that he did not.

31. There is also an issue about Martin's involvement in his client making a false statement in deposition testimony. On September 29, 2020, Martin represented Johnny Wilson at a deposition in Wilson's case against 3M. During that deposition, Martin ***elicited*** testimony from Wilson that Wilson did not learn about dust mask cases—the central fact at issue in the statute of limitations inquiry—until August 2019. As Martin now admits in his recent affidavit (once again

torpedoing his client in the process), that is a materially false statement: Wilson met with attorney Hammond at least as early as May 2018, well outside of the statute of limitations period (which would be March 2019 at the latest). That lie has now been exposed, but back in September 2020, when Martin, Hammond, and Givens were relying on that lie to overcome 3M's summary judgment defense, Martin's client—a coal miner seeking desperately to get 3M to pay for his black lung injuries—falsely testified, under oath, to further the lie:

| | |
|---|---|
| *Martin Question*: | When did you realize that the mask might have played a role in causing your illness? |
| *Wilson Answer*: | Well, I was driving down the road one day, hear this radio advertisement talking about -- |
| *Martin Question*: | When was that? |
| *Wilson Answer*: | I believe it was August '19. […] |
| *Martin Question*: | Had you ever heard that there was a problem with the mask before you heard that radio advertisement in August of 2019? |
| *Wilson Answer*: | No. […] |
| *Martin Question*: | I take it Mr. Hammond never mentioned anything like that to you? |
| *Wilson Answer*: | No. […] |
| *3M Question*: | Do you know who the lawyers were that were advertising on the radio? |
| *Wilson Answer*: | Nope. |
| *3M Question*: | So when you heard about that, whenever that was -- and you gave the date -- I'm -- you went and saw Mr. Hammond? |
| *Wilson Answer*: | Yeah. |
| *3M Question*: | And then he -- you became his client again at that later date when you started working toward filing this lawsuit, right? |
| *Wilson Answer*: | Right. |

*Wilson* Sept 20, 2020, Dep Tr. 77:3-9, 22-25, 78:7-9, 118:21-119:6.

32. Wilson's perjured testimony answers one critical question and begs several others. Wilson's testimony **<u>confirms</u>** that Wilson told lies under oath that would aid his lawyers' ability

to defeat 3M's statute of limitations defense. But how did Mr. Wilson know that a lie was needed to defeat 3M's defense? How did Wilson come up with such a detailed lie? And how did Wilson know to pick a specific date that would work to defeat the statute of limitations? Those questions demand answers. That Martin represented Wilson at, and certainly prepared Wilson for, this deposition, and asked Wilson specific questions at the deposition designed to ***elicit the perjured testimony*** raises (yet other) serious questions about Martin's role in this scheme.

**<u>This Petition</u>**

33. The full nature and scope of Martin's fraudulent conduct and that of his conspirators is not currently known. But 3M has reason to believe that evidence of the fraud and the scope of the underlying scheme to file false claims against 3M are currently maintained by Martin and Martin Walton in Galveston County, Texas.

34. 3M is not seeking information protected by the attorney client privilege or work product doctrines, although the evidence to date does and will support the application of the crime/fraud exception when the time comes and, as noted below, any privilege has been waived as to certain communications. As discussed in detail below and in the attached subpoena, 3M's requests are narrowly tailored and precise. 3M is seeking non-privileged materials such as information and testimony demonstrating the ***timing***, ***means***, and ***process*** of client intakes; the timing, means, and process of information sharing between Martin, Hammond, and Givens; and the process that Martin did, or likely did not, undertake prior to accepting/filing/joining/advancing claims brought by Hammond, Martin, and Givens against 3M in Kentucky. *See Gen. Motors Corp. v. Gayle*, 924 S.W.2d 222, 229 (Tex. App.—Houston [14th Dist.] 1996), subsequent mandamus proceeding, 940 S.W.2d 598 (Tex. 1997) (attorney notes from conferences with witnesses containing neutral recitals of facts are not privileged); *Leede Oil & Gas, Inc. v. McCorkle*, 789

S.W.2d 686, 687 (Tex. App.—Houston [1st Dist.] 1990, no writ) ("The work product privilege protects the mental impressions and strategy of the attorney, not facts of the case."). 3M is also seeking communications between Hammond, Givens, and Martin about the *Wilson* statute of limitations issue, as Martin and Givens have now waived any privilege attached to those discussions and have admitted that (at the very least) Hammond engaged in fraud.

35. 3M seeks these depositions to obtain further information to investigate its potential claims against Martin and Martin Walton, as well as Hammond and Givens.

## V.
## APPLICABLE LAW

36. Texas Rule of Civil Procedure 202.1(b) authorizes the court to order "the taking of a deposition on oral examination or written questions . . . to investigate a potential claim or suit." Tex. R. Civ. P. 202.1(b).

37. Rule 202.2 sets out the basic requirements that must be met when a deposition is being sought to investigate potential claims. The petition must be verified; be filed where the witness resides; be in the name of the petitioner; state that the petitioner seeks to investigate a potential claim by or against the petitioner; state the name, address and telephone number of the person to be deposed, the substance of the testimony that the petitioner expects to elicit, and the petitioner's reasons for desiring to obtain the testimony; and request an order authorizing the petitioner to the deposition of the person named in the petition. TRCP 202.2.

38. Pursuant to Rule 202.4, "a court **must** order a deposition to be taken if . . . it finds that:

> (1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit; or
>
> (2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure."

Tex. R. Civ. P. 202.4(a) (emphasis added). Here, as further explained below, the likely benefit of allowing 3M to take the requested depositions in order to investigate potential claims of fraud outweighs the minimal burden or expense associated with the depositions.

39. Courts routinely order depositions pursuant to Texas Rule of Civil Procedure 202. *See, e.g.*, *In re Johnston*, No. 06-10-00095-CV, 2010 WL 3930603 (Tex. App.—Texarkana Oct. 7, 2010, no pet.) (determining that the trial court did not abuse its discretion in ruling that the benefits to the petitioner of investigating unknown potential parties outweighed the burden of a deposition); *In re Emergency Consultants, Inc.*, 292 S.W.3d 78 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (denying mandamus relief in a case where the trial court determined, inter alia, that the benefit of allowing the petitioner to investigate potential claims outweighed the burden of taking four pre-suit depositions). The sole and entirely non-unique burden to the expected deponents of having to sit for a deposition and produce documents already in their possession cannot outweigh the benefit of determining whether fraudulent conduct by Martin, an officer of the court, or others occurred.

## VIII.
## REQUEST FOR ORAL DEPOSITIONS AND ISSUANCE OF SUBPOENA DECES TECUM REQUIRING PRODUCTION OF DOCUMENTS

40. Pursuant to Texas Rules of Civil Procedure 202 and 205, 3M seeks an order from the Court authorizing it to take the oral deposition of a corporate representative of Martin Walton with the most knowledge of (i) the operations of the firm, (ii) dust mask claims filed by attorneys of the firm along with Hammond and Givens against 3M, (iii) any relationship with Hammond, Givens, or their respective firms, (iv) the files relating to dust mask claims previously transferred by Hammond and/or Glenn Martin Hammond Law Offices to Martin and Martin Walton, (v) copies of the paper files of dust mask clients allegedly discovered in Hammond's office on

March 16, 2023, to be transferred to Martin Walton by Hammond or Glenn Martin Hammond Law Offices; and (vi) communications related to the statute of limitations in the *Wilson* matter.

41. Pursuant to Texas Rules of Civil Procedure 202 and 205, 3M also seeks an order from the Court authorizing it to take the oral deposition of Mike Martin pertaining to: (i) the general practices of, and any software or other resources used by, Martin Walton relating to case management, file management, record collection, data storage and retention, split-fee or other arrangements with third-party attorneys or law firms, and financial accounting related to dust mask claims filed by Martin, or for which Martin has filed appearances, in which Givens and Hammond are or were co-counsel, against 3M in in Kentucky; (ii) Martin's knowledge of the processes and systems employed by Hammond and Givens in soliciting, intaking, vetting, and preparing claims; (iii) any and all bar disciplinary actions alleged against Martin, Hammond, or Givens and any legal malpractice allegations or claims brought against Martin, Hammond, or Givens; (iv) any relationship between Martin or Martin Walton on the one hand, and Glenn Martin Hammond, Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm, PLLC on the other; (v) the documents Martin's counsel was referencing in his March 22, 2023 statement quoted in Law360, (vi) the electronic files relating to dust mask claims previously transferred by Hammond and/or Glenn Martin Hammond Law Offices to Martin and Martin Walton, (vii) the paper files of dust mask clients allegedly discovered in Hammond's office on March 16, 2023, to be transferred to Martin Walton by Hammond or Glenn Martin Hammond Law Offices, and (viii) communications between Martin, Hammond, and Givens related to the statute of limitations in the *Wilson* matter.

42. 3M also seeks an order authorizing 3M to serve Martin and Martin Walton each with a subpoena duces tecum, attached below as Exhibits A and B, compelling the production of relevant records readily available to them.

## X.
## PRAYER

For these reasons, 3M asks this Court to set this Petition for a hearing and, following that hearing, issue an order requiring Martin and Martin Walton to appear for depositions on oral examination by 3M and to produce documents provided for by way of subpoenas duces tecum to be issued pursuant to the Texas Rules of Civil Procedure.

Respectfully submitted,

Winston & Strawn LLP

*/s/Denise Scofield*

Denise Scofield
Texas Bar No. 00784934
dscofield@winston.com
Brandon Duke
Texas Bar No. 240994476
bduke@winston.com
800 Capitol Street, Suite 2400
Houston, Texas 77002
(713) 651-2600

Steve Grimes (*pro hac* application to be filed)
sgrimes@winston.com
Whitney Adams (*pro hac* application to be filed)
wiadams@winston.com
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600

**ATTORNEYS FOR PETITIONER**
**3M COMPANY**

## VERIFICATION

STATE OF Tennessee §

§

COUNTY OF Cheatham §

**BEFORE ME**, the undersigned authority, on this day personally appeared William Childs, 3M Company's Director/Assistant General Counsel, who being by me duly sworn upon his oath, stated that he is fully competent and duly authorized to make this verification on behalf of 3M Company, that he has read the foregoing Verified Petition for Authorization to Conduct Rule 202 Pre-Suit Depositions, and the facts stated therein are true and correct.

______________________________

William Childs

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this 27 day of March, 2023.

SAMANTHA B. DOMINGUEZ
STATE OF TENNESSEE
NOTARY PUBLIC
COUNTY OF CHEATHAM
ONLINE NOTARY PUBLIC
MY COMMISION EXPIRES: JULY 26 2025

______________________________

Notary Public, State of Tennessee

My Commission Expires: July 26, 2025

Document Notarized using a Live Audio-Video Connection

## Exhibit A – Documents to be Produced by Michael B. Martin

## I. Definitions

"Dust Mask Client(s)" refers to any individual that has sought representation from You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton, and/or Givens Law PLLC for the purpose of filing a dust mask (or respirator) claim against 3M in Kentucky; any such individual on whose behalf a claim and Your name appears on the filed complaint or You filed an appearance in that case after the complaint was filed.

"You" and "Your" refer to Michael B. Martin and/or Martin Walton.

## II. Documents to be Produced

Produce the following documents, with privileged information redacted as appropriate but non-privileged information such as dates, signatures, and client details not redacted, including non-privileged but otherwise confidential information, subject to entry of a protective order providing appropriate protections from disclosure of such information:

1. Any and all retention agreements, engagement letters, contracts for attorney fees, or other agreements between a Dust Mask Client and You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton, and/or Givens Law PLLC.

2. Any and all any correspondence, mail, emails, texts, calendar entries, phone records, or electronic invitations or other records of any videoconference between a Dust Mask Client and You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton, and/or Givens Law PLLC, relating to a Dust Mask Client's initial meeting with You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton, and/or Givens Law PLLC regarding a Dust Mask Claim.

3. Any and all emails or other records relating to the transfer of files maintained by Glenn Martin Hammond Law Office relating to any Dust Mask Client to You, Johnny Givens, the Martin Walton Law Firm and/or Givens Law Firm PLLC, including but not limited to any transfer via Dropbox.

4. Any and all client intake files or forms for Dust Mask Clients maintained by You and/or sent to You by Glenn Martin Hammond Law Office, including but not limited to any intake

form or questionnaire completed, or written notes taken, during the intake, and any consent to release forms, requests for medical records, authorization of release forms, or other forms completed for the purpose of obtaining records on the client's behalf.

5. Any and all entries into an electronic or hard copy database or log relating to any Dust Mask Client's intake by (or first contact with) Glenn Martin Hammond Law Office.

6. Any and all folder/document creation dates for any Dust Mask Client file stored on a network, server, or local computer to which You have access, or which You use, maintain, control or own.

7. Any and all logs or other records of activity in Dust Mask Client's case in any calendar, word document, spreadsheet, or other electronic or paper format maintained You.

8. Records sufficient to show dates of travel by You to Kentucky for purposes relating to the investigation, filing or prosecution of claims filed on behalf of Dust Mask Clients.

9. Any and all contracts, agreements, or other documents reflecting a split-fee or similar arrangement between You and Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, and/or Givens Law PLLC relating to representation of Dust Mask Clients in claims filed against 3M.

10. Any and all records relating to bar disciplinary actions alleged against You, Glenn Hammond, or Johnny Givens.

11. Any and all records relating to any legal malpractices allegations or claims brought against You, Glenn Hammond, or Johnny Givens.

12. Any and all documents that You discovered on or around March 17, 2023 that had not been disclosed to You by Glenn Hammond, as described in a statement by Your counsel reported on March 22, 2023 by Law 360 that "on March 17, [You] went to Kentucky to review files at the Hammond office, only to discover that some documents were never disclosed to" You.

13. The referral agreement between You or Martin Walton and Hammond and/or Glenn Matin Hammond Law Office regarding dust mask claims dated May 5, 2020, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 1.

14. Any and all communications between You, Hammond, and/or the Glenn Martin Hammond Law Offices relating to entering into a referral agreement and dust mask cases generally, prior to entering into the referral agreement dated May 5, 2020, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 1.

15. Any and all files relating to the dust mask claims transferred electronically to You by Hammond and/or the Glenn Martin Hammond Law Offices on or around May 5, 2020, upon entering into a referral agreement with Glenn Martin Hammond Law Offices, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 1.

16. Any and all client files sent electronically to You and/or Martin Walton by Hammond and/or the Glenn Martin Hammond Law Offices after entering into the referral agreement, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 3.

17. The agreement, or any documents evidencing an agreement, entered into between You and/or Martin Walton on the one hand, and Johnny Givens and/or Givens Law Firm PLLC, whereby Givens began serving Your lead co-counsel on the dust mask claims as of September 20, 2023, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 4.

18. Any and all communications by which You learned of the filling of other dust mask cases by Glenn Martin Hammond Law Offices after the filing of the *Randy Adams, et al.* case, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 5.

19. Any and all files sent electronically to You and/or Martin Walton by Hammond and/or the Glenn Martin Hammond Law Office after the filing of additional cases by the Glenn Martin Hammond Law Office following the filing of the *Randy Adams, et al.* case, including but not limited to intake sheets and other client documents, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 5.

20. Any and all communications, documents or other records upon which You relied in forming the "belief and understanding that the Hammond law firm turned over all client information related to the client's dust mask case when the electronic files were sent to" Martin Walton, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 6.

21. Any and all documents or records relating to Your "standard operating procedure" for ordering records on behalf of clients, including clients with dust mask claims, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 7.

22. Any and all communications, documents or other records relating to the efforts by Your firm "to order records for Johnny Wilson as per [Your] standard operating procedure," as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 7.

23. Any and all communications between You and Hammond, the Glenn Matin Hammond Law Offices, and/or Bernice Wilson relating to the medical authorization dated January 3, 2019, in the records from Dr. Ammisetty, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 7.

24. Records sufficient to show dates of travel by You to Kentucky on or around March 16, 2023, for purposes of "discuss[ing] a response to the order of March 9, 2023," as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 10.

25. Records sufficient to show dates of travel by You to Kentucky on or around March 21, 2023, for purposes of "discuss[ing] a response to the order of March 9, 2023," as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 11.

26. A copy of the hard copy paper file for Johnny Wilson, and the typewritten May 10, 2018 intake form and handwritten intake form therein, provided to You by Hammond on March 16, 2023, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶¶ 11–12.

27. Any and all communications, documents or other records upon which You relied in forming the "understanding that the files [discovered in Hammond's office on March 16, 2023] will be delivered to a copy service in Kentucky for copying and/or scanning and the copies or electronic files will be produced to me and to Mr. Givens" by Hammond, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), Ex. 1, ¶ 16.

28. Any and all files sent electronically to You and/or Martin Walton by Hammond and/or the Glenn Martin Hammond Law Office since March 23, 2023, including but not limited to any individual client intakes and contingency contracts, as described in the Affidavit of Mike Martin dated March 24, 2023. *See* Ex. 1 (Mot. to Stay), ¶ 6; *id.*, Ex. 1, ¶ 16.

**Exhibit B – Topics for Deposition of Michael B. Martin and Martin Walton**

## I. Definitions

"Dust Mask Client(s)" refers to any individual that has sought representation from You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton, and/or Givens Law PLLC for the purpose of filing a dust mask (or respirator) claim against 3M; any such individual on whose behalf a claim and Your name appears on the filed complaint or You filed an appearance in that case after the complaint was filed.

"You" and "Your" refer to Michael B. Martin and/or Martin Walton.

## II. Deposition Topics

The topics to be covered at a deposition of Martin include the following, excluding privileged information as appropriate and including non-privileged but including otherwise confidential information, subject to entry of a protective order providing appropriate protections from disclosure of such information:

1. The general practices of, and any software or other resources used by, Martin Walton relating to case management, file management, record collection, data storage and retention, split-fee or other arrangements with third-party attorneys or law firms, and financial accounting related to claims filed on behalf of Dust Mask Clients by You, or for which You have filed appearances, in which Glenn Hammond and/or Johnny Givens are or were co-counsel, against 3M in in Kentucky.

2. Your knowledge of the processes and systems employed by Glenn Hammond, Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm PLLC in soliciting, intaking, vetting, and preparing claims on behalf of Dust Mask Clients.

3. Any and all bar disciplinary actions alleged against You, Glenn Hammond, or Johnny Givens.

4. Any and all legal malpractices allegations or claims brought against You, Glenn Hammond, or Johnny Givens.

5. Any relationship between You or Martin Walton on the one hand, and Glenn Martin Hammond, Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm, PLLC on the other.

6. Any and all documents that You discovered on or around March 17, 2023 that had not been disclosed to You by Glenn Hammond, as described in a statement by Your counsel reported on March 22, 2023 by Law 360 that "on March 17, [You] went to Kentucky to review files at the Hammond office, only to discover that some documents were never disclosed to" You.

7. Any and all statements made in, topics addressed in, and documents attached as exhibits to the Motion to Stay Hammond Law Offices Dust Mask Cases Hammond Law Offices Dust Mask Claims filed March 24, 2023. *See* Ex. 1 (Mot. to Stay).

Received: 3/27/2023 5:58 PM

Envelope No. 74056289

23-CV-0488
CAUSE NO. ____________

| | | |
|---|---|---|
| 3M COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL B. MARTIN and<br>MARTIN WALTON LAW FIRM,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br>GALVESTON COUNTY, TEXAS<br><br>Galveston County - 10th District Court<br><br>__________ JUDICIAL DISTRICT |

**ORDER GRANTING VERIFIED PETITION TO TAKE DEPOSITIONS BEFORE SUIT TO INVESTIGATE POTENTIAL CLAIMS AND TO ISSUE SUBPOENA DUCES TECUM**

Petitioner's Verified Petition for Authorization to Conduct Rule 202 Pre-Suit Depositions is **GRANTED**. Specifically, the Court finds that the likely benefit of allowing Petitioner 3M Company (3M) to take the depositions of Michael B. Martin and Martin Walton Law Firm to investigate potential claims outweighs the burden or expense of the procedure as required by Texas Rule of Civil Procedure 202(a)(2). Martin and a corporate representative of Martin Walton shall make themselves available for deposition and produce documents in response to the subpoena duces tecum issued by 3M on a date and at a location to be mutually agreed upon by the parties and/or their counsel. Such records shall be produced no later than ~~April 15~~ JUNE 30, 2023 and depositions shall take place no later than ~~May 1~~ JULY 28, 2023.

SIGNED: JUNE 2, 2023.

______________________________
PRESIDING JUDGE

Received 6/14/2024 1:49 PM
Envelope No. 88824419

FILED

2024 JUN 24 PM 2:37

DIST CLERK
GALVESTON COUNTY, TEXAS

CAUSE NO. 23-CV-0488

| | | |
|---|---|---|
| 3M COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL B. MARTIN and MARTIN WALTON LAW FIRM,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br>GALVESTON COUNTY, TEXAS<br><br><br>Galveston County – 10th District Court |

**~~(PROPOSED)~~ ORDER**

This matter came before the Court for a status conference on June 13, 2024. The Court, having reviewed the Court's file and arguments presented by counsel from all parties, finds that it is hereby,

**ORDERED** that Michael B. Martin and the Martin Walton Law Firm (together, "Respondents") produce documents in response to the subpoena duces tecum issued by Petitioner 3M Company no later than **June 30, 2024**. To the extent Respondents withhold privileged material or information, Respondents shall produce a privilege log in accordance with Texas Rule of Civil Procedure 193.3 and submit any documents over which privilege is claimed to the court for *in camera* review on or before **June 30, 2024**.

It is further **ORDERED** that Michael B. Martin appear for a deposition on **July 17, 2024** and that a corporate representative for the Martin Walton Law Firm appear for a deposition on **July 18, 2024** as noticed by Petitioner 3M Company on Monday, June 10, 2024.

PRESIDING JUDGE
6/24/24

23-CV-0488
DCORDER
Order
2806282

CAUSE NO. 23-CV-0488

| | | |
|---|---|---|
| 3M COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL B. MARTIN and<br>MARTIN WALTON LAW FIRM,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br>GALVESTON COUNTY, TEXAS<br><br><br><br><br>10TH JUDICIAL DISTRICT |

**PETITIONER 3M COMPANY'S 4TH AMENDED NOTICE OF INTENTION TO TAKE THE ORAL AND VIDEOTAPED DEPOSITION OF MICHAEL B. MARTIN**

To: Michael B. Martin, 1308 Greenbriar Dr., Friendswood, Texas 77546

**PLEASE TAKE NOTICE** that pursuant to the Texas Rules of Civil Procedure, Petitioner 3M Company ("3M") will take the oral and videotaped deposition of **Michael B. Martin**.

The deposition will take place on **Monday, February 24, 2025**, beginning at **9:30 a.m.**, at the offices of Miller, Scamardi, Carrabba & Burgess, P.C., 6525 Washington Avenue, Houston, Texas, 77007, (713) 861-3595, or at a time and place mutually agreed upon in writing by the parties, and continuing from day to day until the deposition is completed, excluding weekends and holidays. The deposition will be taken before a certified court reporter and will be videotaped. The deposition shall be used for discovery purposes and may be introduced as evidence at the trial of the above captioned lawsuit.

Michael B. Martin shall be prepared to testify in full regarding the topics set forth in Exhibit A.

Dated: February 6, 2025

Respectfully submitted,

Winston & Strawn LLP

/s/ *Walter M. Berger*

Walter M. Berger
Texas Bar No. 00798063
CBerger@winston.com
800 Capitol St., Suite 2400
Houston, Texas 77002
CBerger@winston.com
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Steve Grimes (*pro hac* pending)
SGrimes@winston.com
Whitney Adams (*pro hac* pending)
WIAdams@winston.com
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

**ATTORNEYS FOR PETITIONER 3M COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon on all known parties and counsel of record in accordance with the Texas Rules of Civil Procedure on February 6, 2025 by electronic service. A copy will also be delivered to Michael B. Martin by either hand-delivery, Federal Express, and/or Certified U.S. Mail.

Michael B. Martin
1308 Greenbriar Dr.
Friendswood, Texas 77546
mmartin@martinwaltonlaw.com
dmiller@msc-lawyer.com
dburgess@msc-lawyer.com

Martin Walton Law Firm
699 S. Friendswood Drive, Suite 107
Friendswood, Texas 77546
mmartin@martinwaltonlaw.com
dmiller@msc-lawyer.com
dburgess@msc-lawyer.com

Glenn Hammond
gmhlaw@hotmail.com

Johnny Givens
johnny@givens-law.com

*Counsel for Defendant and Intervenors*

*/s/ Walter M. Berger*

**EXHIBIT A**

## Topics for Deposition for Michael B. Martin[1]

### I. Definitions

"Dust Mask Client(s)" refers to any individual that has sought representation from You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton Law Firm, and/or Givens Law PLLC for the purpose of filing a dust mask (or respirator) claim against 3M; any such individual on whose behalf a claim and Your name appears on the filed complaint or You filed an appearance in that case after the complaint was filed.

"You" and "Your" refer to Michael B. Martin and/or Martin Walton Law Firm.

### II. Deposition Topics

The topics to be covered at a deposition of Michael B. Martin include the following, excluding privileged information as appropriate and including non-privileged but otherwise confidential information, subject to entry of a protective order providing appropriate protections from disclosure of such information:

1. any relationship between You on the one hand, and Glenn Martin Hammond, the Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm, PLLC on the other, including when and under what circumstances You began working with Hammond, the workload allocation among the firms, the sharing of resources and funds among the firms, and the manner in which You communicated with Hammond, Givens, and representatives of their firms (e.g., via phone, email, shared systems, texts, FTP/drop box, etc.);

2. Your knowledge of the processes and systems employed by Glenn Martin Hammond, the Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm PLLC in soliciting, intaking, vetting, and preparing claims on behalf of Dust Mask Clients;

3. the transfer of materials relating to Dust Mask Client cases to You from Glenn Hammond or the Glenn Martin Hammond Law Office, including how materials were transferred and when such transfers occurred;

[1] As explained to the Court and to Respondents during the June 1, 2023 hearing in this matter, to streamline the Court's analysis and the pre-suit discovery process, 3M narrowed its requests to include only the deposition topics listed here.

4. the operation of the Martin Walton firm with respect to Dust Mask Client claims;

5. Your process for vetting Dust Mask Client claims;

6. identification of the Dust Mask Clients with whom You claim to have established an attorney-client relationship; and

7. the paper files allegedly discovered in the Glenn Martin Hammond Law Office on March 16, 2023.

CAUSE NO. 23-CV-0488

| | | |
|---|---|---|
| 3M COMPANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL B. MARTIN and<br>MARTIN WALTON LAW FIRM,<br><br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br>GALVESTON COUNTY, TEXAS<br><br>10TH JUDICIAL DISTRICT |

**PETITIONER 3M COMPANY'S 4TH AMENDED NOTICE OF INTENTION TO TAKE THE ORAL AND VIDEOTAPED DEPOSITION OF MARTIN WALTON LAW FIRM**

To: Martin Walton Law Firm, 699 S. Friendswood Dr., Suite 107, Friendswood, Texas 77546

**PLEASE TAKE NOTICE** that pursuant to the Texas Rules of Civil Procedure, Petitioner 3M Company ("3M") will take the oral and videotaped deposition of the **Corporate Representative of Martin Walton Law Firm**.

The deposition will take place on **Tuesday, February 25, 2025**, beginning at **9:30 a.m.**, at the offices of Miller, Scamardi, Carrabba & Burgess, P.C., 6525 Washington Avenue, Houston, Texas, 77007, (713) 861-3595, or at a time and place mutually agreed upon in writing by the parties, and continuing from day to day until the deposition is completed, excluding weekends and holidays. The deposition will be taken before a certified court reporter and will be videotaped. The deposition shall be used for discovery purposes and may be introduced as evidence at the trial of the above captioned lawsuit.

The Corporate Representative of Martin Walton Law Firm shall be prepared to testify in full regarding the topics set forth in Exhibit A.

Dated: February 6, 2025

Respectfully submitted,

Winston & Strawn LLP

/s/ *Walter M. Berger*
Walter M. Berger
Texas Bar No. 00798063
CBerger@winston.com
800 Capitol St., Suite 2400
Houston, Texas 77002
CBerger@winston.com
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Steve Grimes (*pro hac* pending)
SGrimes@winston.com
Whitney Adams (*pro hac* pending)
WIAdams@winston.com
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

**ATTORNEYS FOR PETITIONER 3M COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon on all known parties and counsel of record in accordance with the Texas Rules of Civil Procedure on February 6, 2025 by electronic service. A copy will also be delivered to Martin Walton Law Firm by either hand-delivery, Federal Express, and/or Certified U.S. Mail.

Michael B. Martin
1308 Greenbriar Dr.
Friendswood, Texas 77546
mmartin@martinwaltonlaw.com
dmiller@msc-lawyer.com
dburgess@msc-lawyer.com

Martin Walton Law Firm
699 S. Friendswood Drive, Suite 107
Friendswood, Texas 77546
mmartin@martinwaltonlaw.com
dmiller@msc-lawyer.com
dburgess@msc-lawyer.com

Glenn Hammond
gmhlaw@hotmail.com

Johnny Givens
johnny@givens-law.com

*Counsel for Defendant and Intervenors*

*/s/ Walter M. Berger*

**EXHIBIT A**

## Topics for Deposition for Martin Walton Law Firm[1]

## I. Definitions

"Dust Mask Client(s)" refers to any individual that has sought representation from You, Glenn Hammond, Johnny Givens, Glenn Martin Hammond Law Office, Martin Walton Law Firm, and/or Givens Law PLLC for the purpose of filing a dust mask (or respirator) claim against 3M; any such individual on whose behalf a claim and Your name appears on the filed complaint or You filed an appearance in that case after the complaint was filed.

"You" and "Your" refer to Michael B. Martin and/or Martin Walton Law Firm.

## II. Deposition Topics

The topics to be covered at a deposition of Martin Walton Law Firm include the following, excluding privileged information as appropriate and including non-privileged but otherwise confidential information, subject to entry of a protective order providing appropriate protections from disclosure of such information:

1. any relationship between You on the one hand, and Glenn Martin Hammond, the Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm, PLLC on the other, including when and under what circumstances You began working with Hammond, the workload allocation among the firms, the sharing of resources and funds among the firms, and the manner in which You communicated with Hammond, Givens, and representatives of their firms (e.g., via phone, email, shared systems, texts, FTP/drop box, etc.);

2. Your knowledge of the processes and systems employed by Glenn Martin Hammond, the Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm PLLC in soliciting, intaking, vetting, and preparing claims on behalf of Dust Mask Clients;

3. the transfer of materials relating to Dust Mask Client cases to You from Glenn Hammond or the Glenn Martin Hammond Law Office, including how materials were transferred and when such transfers occurred;

[1] As explained to the Court and to Respondents during the June 1, 2023 hearing in this matter, to streamline the Court's analysis and the pre-suit discovery process, 3M narrowed its requests to include only the deposition topics listed here.

4. the operation of the Martin Walton firm with respect to Dust Mask Client claims;

5. Your process for vetting Dust Mask Client claims;

6. identification of the Dust Mask Clients with whom You claim to have established an attorney-client relationship; and

7. the paper files allegedly discovered in the Glenn Martin Hammond Law Office on March 16, 2023.

**CAUSE NO. 23-CV-0488**

| | | |
|---|---|---|
| **3M COMPANY,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **GALVESTON COUNTY, TEXAS** |
| | § | |
| **MICHAEL B. MARTIN and MARTIN WALTON LAW FIRM,** | § | |
| | § | |
| | § | |
| **Respondents.** | § | **10TH JUDICIAL DISTRICT** |

---

**RESPONDENT'S OBJECTIONS AND RESPONSES TO PETITIONER'S REQUEST FOR DOCUMENTS TO MICHAEL B. MARTIN**

---

TO: Petitioner, **3M COMPANY**, by and through its attorneys of record, Denise Scofield and Brandon W. Duke, Winston & Strawn LLP, 800 Capitol, Suite 2400, Houston, Texas 77002

COMES NOW, **MICHAEL B. MARTIN**, named Respondent in the above-captioned cause, by and through his attorney of record, and pursuant to the Texas Rules of Civil Procedure, Texas Rules of Evidence and the Court's Order, makes and serves the following Objections and Responses to the request for documents previously served by Petitioner.

Respectfully submitted,

MILLER, SCAMARDI, CARRABBA
& BURGESS, P.C.

By: /s/ David L. Miller
David L. Miller
SBN: 14067300
Diane F. Burgess
SBN: 24036594
6525 Washington Avenue
Houston, Texas 77007-2112
TEL: (713) 861-3595
FAX: (713) 861-3596
E-SERVICE: e-service@msc-lawyer.com

**ATTORNEYS FOR RESPONDENTS, MICHAEL B. MARTIN AND MARTIN WALTON LAW FIRM**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via electronic service, electronic mail, certified mail, return receipt requested and/or facsimile, pursuant to Rule 21a, TEX. R. CIV. P., on this 1st day of July 2024.

/s/ David L. Miller
David L. Miller / Diane F. Burgess

## RESPONDENT'S OBJECTIONS TO PETITIONER'S DEFINITIONS

Respondent objects to Petitioner's definition of "Dust Mask Client(s)" on several grounds. First, it calls for speculation as to the identity of clients of Glenn Hammond, Johnny Givens, Glenn Hammond Law Office, and Givens Law, PLLC. 3M failed to give notice to other nonparties (Martin's former clients) whose records are sought by the request to Martin, as required by Rule 205. TEX. R. CIV. P. Other than the dust mask clients that are the subject of the May 5, 2020 agreement, said definition is overbroad in scope, not limited and time and calls for speculation. The second prong of the definition contemplates any client Martin has ever represented in any capacity, as it is not limited to claims filed against 3M, is not limited to claims filed for dust mask or respirator claims, and has no limitation in time or geography. The breadth of said definition appears to contemplate any client Respondent has ever represented, which clearly falls outside the scope of the Petition for 202 Deposition and seeks information that is irrelevant and privileged. Martin could not possibly attempt to respond based on the scope of this definition.

## RESPONDENT'S OBJECTIONS AND RESPONSES TO DOCUMENTS REQUESTED

1. any and all retention letters, engagement letters, and other agreements between You on the one hand, and Glenn Martin Hammond, the Glenn Martin Hammond Law Office, Johnny Givens, and/or Givens Law Firm, PLLC on the other;

**OBJECTION:** **Respondent objects to the extent Petitioner seeks documents that are not relevant to the 202 Petition, and the request is overbroad in scope and time. Petitioner's request for "other agreements" is vague and ambiguous.**

**RESPONSE:** **Subject to and without waiving Respondent's objection, the only responsive document to this request is the letter agreement dated May 5, 2020, which is already in Petitioner's possession, as it was also produced in the Johnny Wilson, et al v. 3M case pending in Pikesville, Kentucky (now on appeal) and was attached as Exhibit 8 to Petitioner's Reply to Respondents' Response to the 202 Petition. See documents, Bates-labeled MM 000001 – 5. In addition, see executed Election Letters, Bates-labeled MM 000005 - 13, to the extent responsive.**

2. any and all Dust Mask Client intake files (including intake forms, questionnaires, and other written notes taken during intake; consent to release forms, requests for medical records, and other forms completed for the purpose of obtaining records on the client's behalf; and contracts for attorney's fees and other agreements executed upon retention) and the date You received the file;

**OBJECTION:** **Based on the definition of Dust Mask Client, Respondent could not possibly respond to the unduly burdensome and overbroad nature of this request. Respondent further objects to the extent Petitioner's request is**

**not limited in time and seeks information outside the scope of a request for documents by seeking a narrative response ("and the date you received the file"). Respondent objects to this request for "intake files" and "other agreements" is vague as Petitioner's definition incorporates privileged information and would contemplate clients not referred by Hammond. Respondent further objects to the extent Respondent no longer represents the majority of the Dust Mask Clients contemplated by the request and is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of confidential and privileged information to 3M, including medical authorizations or records, and said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; TEX. R. EVID. 503(b)(1). Information contained in documents included in Dust Mask Client intake files also includes information protected from disclosure by Rules 509 and 510 of the Texas Rules of Evidence. Said disclosure of protected health information in responsive documents is further prohibited by HIPAA, the applicable federal regulations, and its state equivalents (TX and KY). Texas Health and Safety Code §181.154(c) and 45 C.F.R. §164.502(a)(1). Finally, this request seeks information that is not relevant when suit has been filed for a dust mask client within one year of diagnosis. *See 3M Company v. Engle*, 328 S.W.3d 184, 189 (KY 2010).**

**RESPONSE:** **Subject to and without waiving Respondent's objection, 3M is in possession of intake files produced or discovery responses served for claims in which Martin is counsel of record, e.g., Blair00001-00003, and attached as documents, Bates-labeled MM 000014 - MM 000048.**

**Martin withholds documents characterized as intake files for Dust Mask Clients, who he no longer represents or for those clients where suit has not been filed by Martin or Hammond or discovery requests have not been served, pursuant to the attorney-client, work product and HIPAA protections governing confidential and protected health information. TEX. R. EVID. 503, 509 and 510.**

**Martin maintains these intakes or the information reflected in same will be the subject of discovery at the appropriate time and in the appropriate court where the dust mask claims are pending. Respondent will provide a representative sampling of the privileged documents withheld for the court's *in camera* review, as production of all documents withheld are too voluminous and burdensome. See also, Respondent's Privilege Log.**

3. documents reporting any and all dates on which You created a new file in Your system(s) for a Dust Mask Client;

**<u>OBJECTION</u>:** **Respondent objects to the extent Petitioner's request is overbroad and unduly burdensome, and is not limited in time and seeks information outside the scope of a request for documents. Respondent objects to the extent Respondent no longer represents certain Dust Mask Clients contemplated by the request and is without authority to respond on their behalf. Respondent further objects to the extent Petitioner's request is prohibited to the extent it seeks a narrative response in lieu of a document.**

**<u>RESPONSE</u>:** **Subject to and without waiving Respondent's objection, Respondent has no responsive documents reflecting the date a new file was created for a Dust Mask Client and has not withheld any responsive documents. Documents produced in response to Request No. 4 may reflect communications regarding receipt of client file material, but may not also reflect the date a new file was created in the firm's system.**

4. documents reporting any and all dates on which materials relating to Dust Mask Client cases were transferred to You from Glenn Martin Hammond or the Glenn Martin Hammond Law Office, including what files were transferred and how they were transferred;

**<u>OBJECTION</u>:** **Respondent objects to the extent Petitioner's request is not limited in time and seeks information outside the scope of a request for documents by seeking a narrative response (". . . and how they were transferred"). Respondent further objects to the extent the request is vague as to materials and their transfer. Petitioner's request is unduly burdensome as Respondent could not possibly identify every document that might report a date upon which file materials relating to Dust Mask Client cases were "transferred" from the Glenn Martin Hammond Law Firm. Furthermore, Respondent objects to the extent Respondent no longer represents the majority of Dust Mask Clients contemplated by the request and is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of any confidential and privileged information to 3M, including communications referencing medical records or medical authorizations, as said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; TEX. R. EVID. 503(b)(1). Information contained in communications and documents included in materials relating to Dust Mask Client cases includes information protected from disclosure by Rules 509 and 510 of the Texas Rules of Evidence. Said disclosure of protected health information in responsive documents is further prohibited by HIPAA, the applicable**

**federal regulations, and its state equivalents (TX and KY). Texas Health and Safety Code §181.154(c) and 45 C.F.R. §164.502(a)(1).**

**<u>RESPONSE</u>:** **Subject to and without waiving Respondent's objection, see attached responsive documents, Bates-labeled MM 000049 - MM 000119.**

**Respondent withholds communications referencing documents or file materials for Dust Mask Client cases, who he no longer represents or for those clients where suit has not been filed by Martin or Hammond, pursuant to the attorney-client, work product and HIPAA protections governing confidential and protected health information. TEX. R. CIV. P. 503, 509 and 510. In the event privilege is waived or consent is given after Petitioner's notice to nonparties impacted by the request, Respondent will produce responsive documents. Respondent will produce documents withheld for the court's *in camera* inspection. See also, Respondent's Privilege Log.**

5. redacted copies of any and all communications indicating that You would be working with Glenn Martin Hammond and/or the Glenn Martin Hammond Law Office to provide legal representation, including such communications to Dust Mask Clients;

**<u>OBJECTION</u>:** **Respondent objects to the extent Petitioner's request is not limited in time and is overbroad and unduly burdensome to produce all communications referencing the working relationship with Hammond's Law Office. Respondent objects to the extent Respondent no longer represents certain Dust Mask Clients contemplated by the request and is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of communications referencing confidential and privileged information to 3M, including communications referencing medical records or medical authorizations, as said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; Tex. R. Evid. 503(b)(1). Information contained in communications to Dust Mask Client includes information protected from disclosure by Rules 509 and 510 of the Texas Rules of Evidence. Said disclosure of protected health information in responsive documents is further prohibited by HIPAA, applicable federal regulations and its state equivalents (TX and KY). Texas Health and Safety Code §181.154(c) and 45 C.F.R. §164.502(a)(1).**

**<u>RESPONSE</u>:** **Subject to and without waiving Respondent's objection, see attached redacted documents Bates-labeled MM 000120 – MM 001073.**

6. documents reporting the dates of any and all meetings with Dust Mask Clients (in person, or via phone, videoconference, or other means), including all receptionist logs;

<u>**OBJECTION**</u>: **Based on the definition of Dust Mask Client, Respondent could not possibly respond to the unduly burdensome and overbroad nature of this request or even attempt to ferret out all documents that happen to reference dates of a client meeting or phone call. Respondent further objects to the extent Petitioner's request is not limited in time. Respondent objects to the extent Respondent no longer represents certain Dust Mask Clients contemplated by the request and is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of confidential and privileged information to 3M, including production of documents that include reference to medical authorizations or medical records, as said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; Tex. R. Evid. 503(b)(1). Documents reporting dates of meetings with Dust Mask Clients on their face would include attorney-client communications, work product and confidential protected health information protected from disclosure by Rules 503, 509 and 510 of the Texas Rules of Evidence and constitutes work product. Said disclosure of any documents referencing dates of meetings may include reference to protected health information in responsive documents is further prohibited by HIPAA, applicable federal regulation and its state equivalents (TX and KY). Texas Health and Safety Code § 181.154(c) and 45 C.F.R. § 164.502(a)(1).**

<u>**RESPONSE**</u>: **Subject to and without waiving Respondent's objection, Respondent has no receptionist logs.**

**See attached redacted responsive documents, Bates-labeled MM 001074 - MM 001078.**

**Respondent withholds documents revealing attorney-client communication, work product and confidential protected health information and will produce a representative sampling of privileged documents for the court's *in camera* inspection, as production of all privileged responsive document is too voluminous and unduly burdensome. See also, Respondent's Privilege Log.**

7. documents reporting the dates of any and all meetings with or among You, Glenn Martin Hammond, representatives of the Glenn Martin Hammond Law Office, Johnny Givens, and/or representatives of Givens Law Firm, PLLC;

<u>**OBJECTION**</u>: **Respondent objects to the extent this request is not limited in time or scope. The definition of "You" would include any and all internal firm**

**communications regarding any case, which is clearly not contemplated by the scope of the 202 Petition. Furthermore, the scope of the request is not limited to Hammond Dust Mask claims against 3M, which further exceeds the scope of the 202 Deposition. There is not even a limitation regarding the scope of the meeting or subject of the meeting. Any communications among the lawyers representing the same client regarding the legal representation of Dust Mask Clients as defined is so overbroad and unduly burdensome, it would be impossible to determine the scope or universe of responsive documents, as referenced above in the objection to the definition of Dust Mask Client(s). Respondent objects to the extent any communication between co-counsel that reference the dates of meetings are privileged communications, as defined by Rule 503(b)(1)(E) of the Texas Rules of Evidence, and likewise exempt from a document request as privileged attorney-client communication. Furthermore, for the vast majority of Dust Mask Clients, Respondent withdrew from representation of the Hammond Plaintiffs contemplated by the request. Respondent is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of documents referencing dates of meetings of their lawyers regarding their cases that include confidential and privileged information to 3M, including production of documents that include reference to medical authorizations or medical records, as said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; TEX. R. EVID. 503(b)(1). Documents reporting dates of meetings between lawyers regarding Dust Mask Clients on their face would include attorney-client communications, work product and confidential protected health information protected from disclosure by Rules 503, 509 and 510 of the Texas Rules of Evidence and constitutes or includes work product. Said disclosure of any documents referencing dates of meetings may include reference to protected health information in responsive documents is further prohibited by HIPAA, applicable federal regulations and its state equivalents (TX and KY). Texas Health and Safety Code §181.154(c) and 45 C.F.R. §164.502(a)(1).**

**RESPONSE:** **Subject to and without waiving Respondent's objection, see Affidavit of Mike Martin attached to Motion to Stay regarding the meetings conducted regarding the Johnny Wilson case and attached responsive documents, MM 001079 - MM 001114**

**Respondent withholds documents revealing attorney-client communication, work product and confidential protected health information and will produce said documents for the court's *in camera* inspection. See also, Respondent's Privilege Log.**

8. any and all communications between You, Glenn Martin Hammond, representatives of the Glenn Martin Hammond Law Office, Johnny Givens, and/or representatives of Givens Law Firm, PLLC about the inventory of Dust Mask Client claims prior to the filing of a complaint, including all versions of the spreadsheet labeled "active dust mask list"; and

**OBJECTION:** **Respondent objects to the extent this request is not limited in time or scope. The definition of "You" would include any and all internal firm communications regarding any case, which is clearly not contemplated by the scope of the 202 Petition. Furthermore, the scope of the request is not limited to Hammond Dust Mask claims against 3M, which further exceeds the scope of the 202 Deposition. There is not even a limitation regarding the scope of the meeting or subject of the meeting. Any communications among the lawyers regarding the legal representation of Dust Mask Clients as defined is so overbroad and unduly burdensome, it would be impossible to determine the scope or universe of responsive documents, as referenced above in the objection to the definition of Dust Mask Client(s). Respondent objects to the extent any communication between co-counsel that reference the Dust Mask Client claims are privileged communications as defined by Rule 503(b)(1)(E) of the Texas Rules of Evidence and are likewise exempt from a document request as privileged attorney-client communication. Furthermore, for the vast majority of Dust Mask Clients, the complaint had been filed prior to Respondent's involvement or without Respondent's consent. Respondent withdrew from representation of the Hammond Plaintiffs contemplated by the request. Respondent is without authority to respond on their behalf, as the Dust Mask Client retains the privilege and has not consented to the production of documents referencing communications between lawyers regarding their cases that include confidential and privileged information to 3M, including production of documents that include reference to medical authorizations or medical records, as said Dust Mask Clients were not served with notice of the request as required by Rule 205.3(c). TEX. R. CIV. P.; TEX. R. EVID. 503(b)(1). Documents regarding communications between lawyers regarding Dust Mask Clients on their face would include attorney-client communications, work product and confidential protected health information protected from disclosure by Rules 503, 509 and 510 of the Texas Rules of Evidence and constitutes or includes work product. Said disclosure of any documents referencing said communications may include reference to protected health information of non-parties and is further prohibited by HIPAA, applicable federal regulations and its state equivalents (TX and KY). Texas Health and Safety Code §181.154(c) and 45 C.F.R. §164.502(a)(1). Respondent further objects to the extent the request is overbroad and unduly burdensome, and vague as to inventory of claims.**

**RESPONSE:** **Subject to and without waiving Respondent's objection and assertion of privilege, see documents produced in response to request No 4. See also, the redacted spreadsheet labeled "active dust mask list" provided by**

**Glenn Hammond's office with email communication, attached and Bates-labeled MM 001175 – 1250. See also, Respondent's revised version of the redacted spreadsheet, which highlights cases never received from Glenn Hammond's office, attached and Bates-labeled MM 001115 – 1174. Additional responsive documents are also attached and Bates-labeled: MM 001251 – 1286.**

**Respondent withholds responsive documents revealing attorney-client communication, work product and confidential protected health information and will produce said documents for *in camera* inspection. See also, Respondent's Privilege Log.**

9. copies of any paper files allegedly discovered in the Glenn Martin Hammond Law Office on March 16, 2023.

**<u>OBJECTION</u>:** **Respondent objects to the extent Petitioner seeks information protected by attorney-client privilege, attorney and work product privilege for clients Respondent no longer represents, who are Dust Mask Clients contemplated by the request, as Respondent is without authority to respond on their behalf. Respondent objects to the extent "paper files" is vague.**

**<u>RESPONSE</u>:** **Subject to and without waiving Respondent's objection and assertion of privilege, the Johnny Wilson paper file was the only paper file Respondent was permitted to copy and relevant excerpts of the paper file, including the original intake for Johnny Wilson was previously produced to 3M in the Johnny Wilson case on March 31, 2023 in the Rule 60 Motion to Clarify as Exhibit 10 and 11. See responsive documents, Bates-labeled MM 001287 – 1303.**

**The remainder of the paper file includes confidential attorney-client communications and work product documents, as well as medical records and documents regarding confidential protected health information, protected by privilege. TEX. R. CIV. P. 503, 509 and 510. Respondent no longer represents the Wilsons and is unable to disclose privileged information, as the case remains pending on appeal. The remainder of the paper file will be produced to the court for *in camera* inspection.**

**In addition, Respondent was only able to copy portions of the files for Glen Coleman and Tim Adkins (1972) on March 16, 2023. Respondent no longer represents either client and said documents include confidential attorney-client communications and work product documents, as well as medical records and documents regarding confidential protected health information, protected by privilege that**

**Respondent is unable to disclose. TEX. R. CIV. P. 503, 509 and 510. These excerpts of paper files will be produced for the court's *in camera* inspection. See also, Respondent's Privilege Log.**