**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

***Electronically Filed***

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:26-cv-00034-REW-MAS |
| | ) | |
| GLENN M. HAMMOND, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT MARTIN'S ANSWER WITH COUNTERCLAIM**

---

COMES NOW, **MICHAEL B. MARTIN**, Defendant and Counter-Plaintiff herein, and in answer to Plaintiff's First Amended Complaint, will respectfully show the Court as follows:

1. Defendant denies Paragraph 1 in its entirety.

2. Defendant admits that he worked with Hammond and Givens in representing certain Kentucky dust mask claimants, and text message discussed in Paragraph 149 was sent from a Martin iPhone, and later appeared in the Mitchell action. Defendant denies that he knowingly filed or prosecuted fraudulent claims. His use of the word "frivolous" referred to his personal case-selection standard, as explained in his deposition, rather than an admission that the claims violated the procedural rules. Defendant denies the remaining allegations in Paragraph 2.

3. Defendant admits that Judge Hall found Hammond's affidavit materially

false in Individual 74's case. Defendant denies that he formed an unlawful enterprise, coached witnesses to lie, or knowingly made false statements. Defendant denies the remaining allegations in Paragraph 3.

4. Defendant admits that the Hammond-related claims included more than 850 claims and that more than half were filed in one state court over the period described. Defendant denies that he personally filed all such claims or used their timing to advance a fraudulent scheme. Defendant denies the remaining allegations in Paragraph 4.

5. Defendant admits that his name appeared as co-counsel on 22 complaints in six eastern Kentucky counties. Defendant denies the remaining allegations in Paragraph 5.

6. Defendant admits that 3M incurred litigation expenses in defending dust mask cases. Defendant lacks knowledge or information sufficient to form a belief about the amount of those expenses or 3M's internal settlement evaluations. Defendant denies that expenses or settlement activity resulted from a fraudulent scheme or that he participated in a fraudulent scheme. Defendant denies the remaining allegations in Paragraph 6.

7. Defendant admits that he is an attorney and participated as counsel in Kentucky dust mask litigation involving the claims described. Defendant denies that he joined an unlawful enterprise, encouraged false claims or testimony, knowingly submitted false discovery, or knowingly prosecuted fraudulent claims. Defendant denies the remaining allegations in Paragraph 7.

8. Defendant denies Paragraph 8 in its entirety.

9. Defendant denies Paragraph 9 in its entirety.

10. Defendant denies Paragraph 10 in its entirety.

11. Defendant admits that Defendant Hammond was an attorney in Pike County, Kentucky. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11 and therefore denies them.

12. Defendant admits that Judge Hall entered the March 9, 2023 order finding Hammond's affidavit materially false and that Defendant subsequently raised concerns about Hammond's conduct with the court. Defendant denies that his statements were intended to conceal a scheme or his own participation in fraud. Defendant brought forward the statements to the court out immediately after discovering the discrepancy. Defendant denies the remaining allegations in Paragraph 12.

13. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 and therefore denies them.

14. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 and therefore denies them.

15. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 and therefore denies them.

16. Defendant denies the allegations in the last sentence in Paragraph 16. Defendant admits the remaining allegations in Paragraph 16.

17. Defendant admits that a former client sued him for malpractice and related claims and that a judgment awarded the client $150,000. Defendant denies that the jury found him liable for legal malpractice and the remaining allegations in Paragraph 17.

18. Defendant admits Paragraph 18.

19. Defendant denies Paragraph 19.

20. Defendant admits Paragraph 20.

21. Defendant admits Paragraph 21.

22. Defendant admits that the Complaint asserts federal RICO claims invoking federal-question jurisdiction. Defendant denies that 3M has stated or can prove a viable RICO claim against him. Any remaining allegations in Paragraph 22 are denied.

23. Defendant admits his Texas citizenship and that 3M alleges an amount in controversy exceeding $75,000. Defendant lacks knowledge or information sufficient to form a belief about the citizenship of all other defendants. To the extent Paragraph 23 alleges a legal basis for diversity jurisdiction, Defendant does not contest jurisdiction on that basis in this Answer; he denies that 3M is entitled to recover from him.

24. The allegations in Paragraph 24 concern claims that the Court has dismissed and therefore do not require a response. In the event a response, is required, Defendant admits that 28 U.S.C. § 1367(a) permits supplemental jurisdiction over qualifying related state-law claims and does not contest the Court's exercise of supplemental jurisdiction over the claims pleaded here. Defendant denies the merits of those claims.

25. Defendant admits that he practiced law and participated in litigation in Kentucky and does not contest personal jurisdiction in this Answer. The remaining allegations in Paragraph 25 are denied.

26. Defendant admits to Paragraph 26.

27. Defendant admits Paragraph 27.

28. Defendant admits that personal injury lawsuits have been brought against manufacturers and sellers of dust masks on theories that the products failed to protect coal

workers against harmful dust exposure. Defendant lacks knowledge or information sufficient to form a belief about the other lawyers' motives described in Paragraph 28 and therefore denies those allegations.

29. Defendant admits that federal mine-safety requirements distinguish respiratory protection from primary environmental dust controls. Defendant lacks knowledge or information sufficient to form a belief about the alleged historical usage percentages, the survey's applicability to the claimants at issue, or the practices of all mine operators and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 29.

30. Defendant admits that numerous lawsuits have asserted that dust masks failed to protect coal workers against injuries from dust exposure. Defendant denies the characterization that such lawsuits lack supporting evidence as alleged. Defendant denies the remaining allegations in Paragraph 30.

31. Defendant admits that limitations issues can arise in individual dust mask cases and that some coal workers previously pursued benefits or compensation claims. Defendant lacks knowledge or information sufficient to form a belief that most claimants discovered the legally relevant facts years or decades before filing the claims described and therefore denies that allegation. Defendant denies the remaining allegations in Paragraph 31.

32. Defendant denies Paragraph 32.

33. Defendant admits that Hammond, Givens, and he operated separate law firms and were not officers or employees of one another's firms. Defendant denies the existence

of the unlawful enterprise, illegal objectives, and racketeering activity alleged. Defendant denies the remaining allegations in Paragraph 33.

34. Defendant admits that his name appeared on 22 complaints and that he appeared in and participated in litigation involving some of the claims described. Defendant denies that all complaints were filed or authorized by him or that his participation constituted activity through a RICO enterprise. Defendant denies the remaining allegations in Paragraph 34.

35. Defendant admits that his office sent the November 6, 2020 correspondence reproduced in the Complaint and that counsel communicated with clients and others across state lines in the course of representation. Defendant denies that the correspondence or communications furthered a fraudulent scheme. Defendant denies the remaining allegations in Paragraph 35.

36. Defendant admits that court filings identified Hammond, Givens, and him as counsel in matters in which they participated. Defendant denies that those signature lines establish the existence of an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 36.

37. Defendant admits that he handled litigation, discovery, trial preparation, and settlement discussions in matters in which he participated as counsel, and that Givens performed client meetings, discovery work, deposition preparation, and other legal work. Defendant denies that those activities were duties within an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 37.

38. Defendant admits that his firm entered the May 2020 referral agreement with

Hammond and a joint venture agreement with Givens concerning Kentucky dust mask cases. Defendant admits that he understood Hammond lacked experience in respirator liability litigation. Defendant denies that he knew when he entered into the referral agreement that the referred cases contained any knowingly fraudulent claims or that the agreements divided profits of an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 38.

39. Defendant admits that the May 2020 agreement allocated 2/3 of the contingent fee to Martin Walton and 1/3 to Hammond's office and that the Givens agreement provided for a further division of Martin Walton's portion. Defendant denies any profits were made or that it was an unlawful enterprise. Defendant denies the categorical assertion that no client was ever informed of or consented to the arrangement and denies the alleged ethical violation. Defendant denies the remaining allegations in Paragraph 39.

40. Defendant admits that he traveled to Kentucky, met clients, and used conference rooms at Hammond's office on numerous occasions, estimated in his deposition as dozens. Defendant further admits that Hammond came to Texas once and had lunch with him, while in Texas for other reasons. Defendant denies that those visits or the lunch furthered a fraudulent scheme. Defendant lacks knowledge or information sufficient to form a belief about the exact number and purposes of all visits by Givens and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 40.

41. Defendant denies that he represented Hammond in a deposition but admits

he later reported concerns about undisclosed records and Hammond's conduct. Defendant denies that he counseled concealment, conspired to shift blame for his own fraud, or knew of or participated in concealment of records in storage. Defendant denies the remaining allegations in Paragraph 41.

42. Defendant denies Paragraph 42 in its entirety.

43. Defendant admits that the relevant lawyers and 3M were located in different states and that their litigation activities included interstate communications. Defendant denies that he pursued fraudulent claims or conducted an unlawful enterprise affecting interstate commerce. Defendant denies the remaining allegations in Paragraph 43.

44. Defendant admits that he participated as counsel in some of the Hammond related dust mask cases. Defendant denies that he used fraudulent claims to increase settlement values. Defendant denies the remaining allegations in Paragraph 44.

45. Defendant denies Paragraph 45 in its entirety.

46. Defendant denies Paragraph 46 in its entirety.

47. Defendant denies Paragraph 47 in its entirety.

48. Defendant denies Paragraph 48 in its entirety.

49. Defendant denies Paragraph 49 in its entirety.

50. Defendant denies Paragraph 50 in its entirety.

51. Defendant denies Paragraph 51 in its entirety.

52. Defendant admits that the cases described included claims filed in multiple Kentucky counties and that lawyers in Kentucky, Texas, and Mississippi participated. Defendant denies the pervasive fraudulent scheme alleged and denies knowingly false

communications or unlawful solicitation by him. Defendant denies the remaining allegations in Paragraph 52.

53. Defendant denies Paragraph 53 in its entirety.

54. Defendant admits that respirator use was relevant to the claims he prosecuted. Defendant denies that he knowingly communicated false statements about that use. Defendant denies the remaining allegations in Paragraph 54.

55. Defendant admits that identification of a manufacturer's product was relevant to claims against that manufacturer. Defendant denies that he knowingly communicated false product-identification statements. Defendant denies the remaining allegations in Paragraph 55.

56. Defendant admits that the pleaded injuries and evidence of occupational lung disease were relevant to individual claims. Defendant denies that he knowingly communicated false statements about a claimant's diagnosis. Defendant denies the remaining allegations in Paragraph 56.

57. Paragraph 57 contains statements of law that Defendant denies to the extent they are inconsistent with the law. Defendant denies the remaining allegations in Paragraph 57.

58. Defendant admits that certain claims were voluntarily dismissed following evaluation, pursuant to the 3M agreed upon dismissal program. Defendant denies that dismissals were undertaken to conceal fraud or accompanied by knowingly false explanations but were dismissed pursuant to the 3M dismissal program agreed by 3M in open court. Defendant denies the remaining allegations in Paragraph 58.

59. Defendant denies Paragraph 59 in its entirety.

60. Defendant denies Paragraph 60 in its entirety.

61. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61 and therefore denies them.

62. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 and therefore denies them.

63. Defendant admits that Hammond's staff conducted intake work and that Hammond's firm received and evaluated intake materials and other available records. Defendant denies that he failed to conduct a good faith evaluation once he began participating the cases as alleged. Defendant lacks knowledge or information sufficient to form a belief about each intake participant's qualifications or each alleged act by Hammond and therefore denies those allegations. Defendant denies that he directed or knowingly relied on fabricated intake information. The remaining allegations in Paragraph 63 are denied.

64. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 and therefore denies them.

65. Defendant admits that Hammond's office transmitted some intake information electronically to his firm and that he had a general understanding of Hammond's intake process, including use of product samples for identification. Defendant denies that he knew those procedures were used to fabricate claims or that transmitted information established that he knowingly prosecuted fraudulent claims. The remaining allegations in Paragraph 65 are denied.

66. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 and therefore denies them.

67. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 and therefore denies them.

68. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68 and therefore denies them.

69. Defendant admits that 22 Hammond-related complaints were filed in six eastern Kentucky counties and that his name appeared on them. Defendant admits he later appeared in and participated in certain cases. Defendant admits that he agreed with 3M on a dismissal program after the cases were properly vetted. Defendant denies that he authorized every original filing or knowingly or recklessly joined fraudulent claims. Defendant denies the remaining allegations in Paragraph 69.

70. Defendant admits the filing, service, appearances, and amended pleadings identified in Paragraph 70, including his May 19, 2020 appearance and amended complaint. Defendant uses the case numbering solely to identify the proceedings and does not admit that the action was an "Enterprise Complaint" within a RICO enterprise.

71. Defendant admits that the Brian Adams action, No. 21-CI-322, was filed in the court and on the date identified in Paragraph 71, that his name appeared on the pleading, and that the pleading alleged claims for 248 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant admits that amended complaints were filed

in that action, including a third amended complaint filed by him. Defendant denies the remaining allegations in Paragraph 71.

72. Defendant admits that the Kenneth Hamilton action, No. 21-CI-646, was filed in the court on the date identified in Paragraph 72, that his name appeared on the pleading, and that the pleading alleged claims for 26 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant denies the remaining allegations in Paragraph 72.

73. Defendant admits that the Charles Mounts action, No. 21-CI-807, was filed in the court on the date identified in Paragraph 73, that his name appeared on the pleading, and that the pleading alleged claims for 196 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant admits that the action was subsequently amended. Defendant denies the remaining allegations in Paragraph 73.

74. Defendant admits that the Barm Combs action, No. 21-CI-197, was filed in the court on the date identified in Paragraph 74, that his name appeared on the pleading, and that the pleading alleged claims for 33 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant denies the remaining allegations in Paragraph 74.

75. Defendant admits that the Jamie Banks action, No. 21-CI-204, was filed in the court on the date identified in Paragraph 75, that his name appeared on the pleading, and that the pleading alleged claims for 77 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant admits that the action was subsequently amended. Defendant denies the remaining allegations in Paragraph 75.

76. Defendant admits that the Carter Yates action, No. 21-CI-522, was filed in the court on the date identified in Paragraph 76, that his name appeared on the pleading, and that the pleading alleged claims for 48 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant admits that Givens filed the notice of appearance described. Defendant denies the remaining allegations in Paragraph 76.

77. Defendant admits that the Richard Stump action, No. 22-CI-223, was filed in the court on the date identified in Paragraph 77, that his name appeared on the pleading, and that the pleading alleged claims for 41 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 77.

78. Defendant admits that the Darrell Holbrook action, No. 22-CI-71, was filed in the court on the date identified in Paragraph 78, that his name appeared on the pleading, and that the pleading alleged claims for 41 coal workers and their spouses or estates.

Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 78.

79. Defendant admits that the Stephen Gibson action, No. 22-CI-425, was filed in the court on the date identified in Paragraph 79, that his name appeared on the pleading, and that the pleading alleged claims for 38 coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 79.

80. Defendant admits that the Bryan Bailey action, No. 22-CI-196, was filed in the court on the date identified in Paragraph 80, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker. Defendant admits that 3M was served with the complaint. Defendant denies the remaining allegations in Paragraph 80.

81. Defendant admits that the Ermal Wolford action, No. 22-CI-931, was filed in the court on the date identified in Paragraph 81, that his name appeared on the pleading, and that the pleading alleged claims for five coal workers and their spouses or estates. Defendant admits service on 3M by certified mail. Defendant admits that the action was subsequently amended. Defendant denies the remaining allegations in Paragraph 81.

82. Defendant admits that the Keith Harris action, No. 22-CI-165, was filed in the court on the date identified in Paragraph 82, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker and his spouse. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph

82.

83. Defendant admits that the Sonny Bates action, No. 22-CI-252, was filed in the court on the date identified in Paragraph 83, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker and his spouse. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 83.

84. Defendant admits that the Carl Johnson action, No. 22-CI-960, was filed in the court on the date identified in Paragraph 84, that his name appeared on the pleading, and that the pleading alleged claims for three coal workers and their spouses. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 84.

85. Defendant admits that the Jimmy Morris action, No. 22-CI-281, was filed in the court on the date identified in Paragraph 85, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 85.

86. Defendant admits that the Claude Mills action, No. 23-CI-1, was filed in the court on the date identified in Paragraph 86, that his name appeared on the pleading, and that the pleading alleged claims for 18 coal workers and their spouses. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 86.

87. Defendant admits that the Donald Mitchell action, No. 23-CI-8, was filed in the court on the date identified in Paragraph 87, that his name appeared on the pleading,

and that the pleading alleged claims for 24 coal workers and their spouses. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 87.

88. Defendant admits that the Randall Caudill action, No. 23-CI-13, was filed in the court on the date identified in Paragraph 88, that his name appeared on the pleading, and that the pleading alleged claims for eight coal workers and their spouses. Defendant admits service on 3M by certified mail. Defendant denies that he personally filed or authorized the original complaint. Defendant denies the remaining allegations in Paragraph 88.

89. Defendant admits that the William Lafferty action, No. 23-CI-65, was filed in the court on the date identified in Paragraph 89, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker and his spouse. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 89.

90. Defendant admits that the Lester Tackett action, No. 23-CI-36, was filed in the court on the date identified in Paragraph 90, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker. Defendant admits service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 90.

91. Defendant admits that the Jason Pratt action, No. 23-CI-40, was filed in the court on the date identified in Paragraph 91, that his name appeared on the pleading, and that the pleading alleged claims for one coal worker and his spouse. Defendant admits

service on 3M by certified mail. Defendant denies the remaining allegations in Paragraph 91.

92. Defendant denies Paragraph 92 in its entirety.

93. Defendant admits that motions concerning 43 claimants stated that they had no formal diagnosis of coal workers' pneumoconiosis. Defendant denies that those statements establish that every claimant lacked any occupational lung injury at filing or that he knowingly pleaded false diagnoses. The remaining allegations in Paragraph 93 are denied.

94. Defendant denies Paragraph 94 in its entirety.

95. Defendant denies Paragraph 95 in its entirety.

96. Defendant denies Paragraph 96 in its entirety.

97. Defendant lacks knowledge or information sufficient to admit or deny sentences 1-3 in Paragraph 97. Defendant denies the remainder of Paragraph 97 in its entirety.

98. Defendant denies Paragraph 98 in its entirety.

99. Defendant denies Paragraph 99 in its entirety.

100. Defendant admits that the quoted statement concerning dismissal when a plaintiff did not identify a 3M product was made in the Mounts proceeding. Defendant denies that he entered into a scheme to defraud 3M or knowing falsity when claims were filed. Defendant admits that all cases filed against 3M were part of the agreed upon dismissal program that 3M agreed to in open court. Defendant denies the remaining allegations in Paragraph 100.

101. Defendant admits that 3M was named in the claims described and that other manufacturers supplied respirators. Defendant denies that 3M was selected as an "easy target" or that the dismissal history establishes fraud. Defendant denies the remaining allegations in Paragraph 101.

102. Defendant admits that the underlying complaints contained allegations concerning discovery of injury and causation within the limitations period. Defendant denies that he knowingly made false limitations allegations. Defendant denies the remaining allegations in Paragraph 102.

103. Defendant lacks knowledge or information sufficient to admit or deny Paragraph 103 and therefore denies them.

104. Defendant lacks knowledge or information sufficient to form a belief about each alleged 2016 meeting or intake event involving Individual 3 and therefore denies those allegations. Defendant admits that he later learned of concerns about earlier intake information in Hammond-related cases. Defendant denies knowing of any false statements in any complaint when he undertook representation. Defendant denies participation in concealment. The remaining allegations in Paragraph 104 are denied.

105. Defendant denies Paragraph 105 in its entirety as it pertains to Defendant Mike Martin or Givens. As to Defendant Hammond, Defendant lacks knowledge or information sufficient to admit or deny Paragraph 105 and therefore denies them.

106. Defendant admits that his firm received the Active Dust Mask Client spreadsheet from Hammond's office in March 2022 and that it included earlier file or intake dates. Defendant denies that those dates alone established an earlier dust mask

engagement or that he knowingly prosecuted claims barred by limitations. Defendant also denies that prosecuting cases that ultimately turn out to be past the statute of limitations is fraudulent. Defendant denies the remaining allegations in Paragraph 106.

107. Defendant denies that he represented Hammond at the March 18, 2022 deposition. Defendant admits that he advised the court of earlier contracts and intake materials discovered in Hammond's files. Defendant denies that he counseled perjury, knowingly supported false testimony, or concealed a fraudulent scheme. Defendant denies the remaining allegations in Paragraph 107.

108. Defendant denies he gave false deposition testimony. Defendant admits that he questioned Hammond about earlier dates, reviewed electronic records with his paralegal in spring 2022, and did not prepare a separate written memorandum of that review. Defendant admits that he understood Hammond's explanation to concern prior benefits, workers' compensation, or Social Security matters. Defendant denies that he fabricated the review, knowingly gave false testimony, or then knew the earlier dates represented time-barred dust mask engagements. Defendant denies the remaining allegations in Paragraph 108.

109. Paragraph 109 contains legal case citations that Defendant denies to the extent they are inconsistent with the case opinions. Defendant denies the remaining allegations in Paragraph 109.

110. Defendant admits that claims were asserted on behalf of deceased coal workers or their estates. Defendant lacks knowledge or information sufficient to form a belief about each listed death date without the underlying records and therefore denies

those dates. Defendant denies knowingly filing time-barred estate claims to increase a fraudulent inventory. Defendant denies the remaining allegations in Paragraph 110.

111. Defendant denies Paragraph 111 in its entirety.

112. Defendant denies Paragraph 112 in its entirety.

113. Defendant admits that he testified some cases or claims against particular manufacturers required dismissal after evaluation of product identification, diagnosis, limitations, causation, or product misuse. Defendant admits that he established a dismissal process program that was agreed upon by 3M in open court, and evaluated economic feasibility. Defendant denies that he testified he knowingly filed fraudulent claims, considered only profit, or disregarded his professional duties. Defendant denies the remaining allegations in Paragraph 113.

114. Defendant admits that case materials were transmitted electronically to his firm and that he undertook representation in matters referred by Hammond. Defendant denies that he was on notice of a fraudulent scheme and nonetheless knowingly participated in it. Defendant denies the remaining allegations in Paragraph 114.

115. Defendant admits that he reviewed the first complaint before undertaking the May 2020 referral, anticipated that individualized investigation could require dismissing claims or defendants, and prepared and filed the May 19, 2020 amended complaint. Defendant admits that his firm reviewed available intakes and records provided by Hammond's office and contacted claimants. Defendant denies that this review established knowingly false allegations or limitations bars known to him when he filed the amendment. Defendant denies the remaining allegations in Paragraph 115.

116. Defendant admits that Hammond's office shared some intake and claimant information electronically and that his firm evaluated information it received. Defendant denies that he knowingly submitted allegations contradicted by records then known to him. Defendant lacks knowledge or information sufficient to form a belief about every alleged conversation, instruction, or act involving Hammond and the identified claimants and therefore denies those allegations. Defendant denies the allegations that he knew specified claims were false or participated in an unlawful scheme. Any remaining allegations in Paragraph 116 are denied.

117. Defendant admits that after discovering discrepancies in records he sought stays and withdrawals and raised concerns about Hammond's conduct. Defendant denies that those steps concealed his own fraud or that he knowingly continued false claims as alleged. Defendant denies he engaged in any fraud. Defendant denies the remaining allegations in Paragraph 117.

118. Defendant denies Paragraph 118 in its entirety.

119. Defendant admits that the May 2020 written referral agreement applied to its attached list and that no subsequent written or express oral agreement setting additional terms was completed. Defendant admits that he nevertheless undertook representation in later referred matters and understood they were handled consistently with the first group. Defendant denies that he never obtained any client consent to representation. His firm sent notification letters, communicated with claimants, and understood that it had consent. Defendant admits that some notifications followed appearances. Defendant lacks knowledge or information sufficient to form a belief about all separate agreements or

communications involving Givens and therefore denies those allegations. The remaining allegations in Paragraph 119 are denied.

120. Defendant admits that notices of appearance in the Mitchell case were filed on the dates described and stated that counsel appeared on behalf of plaintiffs. Defendant denies that his appearance falsely claimed an attorney-client relationship or authority. Defendant lacks knowledge or information sufficient to form a belief about each plaintiff's knowledge on those exact dates and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 120.

121. Defendant admits that an attorney-client relationship may arise through the parties' conduct as well as an express agreement. Defendant denies that his representations of authority or attorney-client relationships were knowingly false or intended to deceive. Defendant denies the remaining allegations in Paragraph 121.

122. Defendant admits that signed authorizations were used to seek relevant third-party records. Defendant lacks knowledge or information sufficient to form a belief that every form required all signatures described or was executed during the alleged intake event and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 122.

123. Defendant denies Paragraph 123.

124. Defendant admits that authorizations were exchanged in discovery. Defendant denies that he knowingly fabricated signatures or dates, directed alteration of authorizations, or knowingly supplied false authorizations. Defendant lacks knowledge or information sufficient to form a belief about all alleged acts by Hammond or employees

and about the ink and handwriting on every form identified and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 124.

125. Defendant admits that he assisted with the litigation response to summary judgment in Individual 74's case and that Judge Hall subsequently found Hammond's affidavit materially false. Defendant denies knowingly drafting or submitting a false affidavit or altered authorization. Defendant denies that the order established his knowing participation in fraud. Defendant denies the remaining allegations in Paragraph 125.

126. Defendant admits that his firm communicated with clients, prepared discovery responses, and served interrogatory responses and verifications in matters it handled. Defendant denies that he knowingly provided materially false information. Defendant denies the remaining allegations in Paragraph 126.

127. Defendant admits that certain interrogatory responses used similar language concerning respirator use. Defendant denies that he knowingly supplied false responses or directed clients to provide false information. Defendant lacks knowledge or information sufficient to form a belief about all alleged records, prior employers' practices, and information attributed to other persons and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 127.

128. Defendant admits that counsel prepared clients for depositions. Defendant denies instructing or guiding clients to give false information. Defendant lacks knowledge or information sufficient to form a belief about the alleged private conversation between Givens and Individual 6 and therefore denies that allegation. Defendant denies the remaining allegations in Paragraph 128.

129. Defendant admits representing Individual 74 and preparing him for deposition and that Judge Hall later found Hammond's affidavit materially false. Defendant denies knowingly eliciting or encouraging false testimony or knowingly helping prepare a false affidavit. Defendant lacks knowledge or information sufficient to form a belief about all alleged historical employment overlaps and mine product-supply practices and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 129.

130. Defendant admits that he and Givens participated in other dust mask litigation. Defendant denies knowingly concealing false deposition testimony or improperly influencing witnesses. Defendant lacks knowledge or information sufficient to form a belief about all alleged private witness conversations and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 130.

131. Defendant admits participating in settlement discussions involving multiple claims. Defendant denies using knowingly fraudulent claims as bargaining chips or seeking payment for claims he knew to be false. Defendant denies the remaining allegations in Paragraph 131.

132. Defendant admits that claims were dismissed and that his office communicated settlement demands electronically. Defendant denies that those communications or dismissals knowingly advanced fraudulent claims or concealed fraud. Defendant lacks knowledge or information sufficient to form a belief about the exact wording and total of the identified December 19, 2022 communication without the complete communication and therefore denies those details. Defendant denies the

remaining allegations in Paragraph 132.

133. Defendant admits that he testified he did not offer dismissals as part of settlement discussions and did not use dismissals as bargaining chips. Defendant denies that his testimony was knowingly false or intended to conceal a scheme. Defendant denies the remaining allegations in Paragraph 133.

134. Defendant admits that he testified to agreeing to approximately 78 dismissals with 3M counsel in a different inventory. Defendant denies that these were dismissals of known fraudulent claims used as settlement bargaining chips. Defendant reasserts that the dismissals were part of the agreed dismissal program that 3M agreed to in open court. Defendant denies the remaining allegations in Paragraph 134.

135. Defendant admits that voluntary dismissal motions were filed and certain claims were dismissed in the first complaint pursuant to the dismissal program. Defendant denies that he timed discovery or dismissals to conceal fraud, knowingly misrepresented the reasons for dismissal, or knowingly caused avoidable litigation expense through fraud. Defendant lacks knowledge or information sufficient to form a belief about every exact filing date, order date, or quoted statement in the listed examples without the underlying records and therefore denies those details. Defendant denies the remaining allegations in Paragraph 135.

136. Defendant admits that deposition cancellations and dismissals occurred in the identified proceedings. Defendant denies that he canceled depositions to conceal fraud, gave knowingly false reasons, or knowingly manipulated clients. Defendant lacks knowledge or information sufficient to form a belief about every listed private

conversation, precise date, or act by another person and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 136.

137. Defendant denies that he misled clients about dismissal reasons or directed anyone to lie. Defendant lacks knowledge or information sufficient to form a belief about the alleged private statements of Givens to clients and therefore denies those allegations. Defendant denies the claimed fraudulent purpose of his client communications. Defendant denies the remaining allegations in Paragraph 137.

138. Defendant admits that Individual 74's case was filed by Hammond and later handled by him, and that Judge Hall ultimately dismissed it on limitations grounds. Defendant denies that he knew the claim was time barred when he undertook representation. Defendant denies the remaining allegations in Paragraph 138.

139. Defendant admits that 3M moved for summary judgment in Individual 74's case on limitations grounds. Defendant lacks knowledge or information sufficient to form a belief about 3M's exact expenditures and therefore denies that characterization of cost. Defendant denies the remaining allegations in Paragraph 139.

140. Defendant admits that the Hammond affidavit was submitted in opposition to summary judgment and asserted that the dust mask engagement began in February 2020. Defendant denies that he knew the affidavit was materially false when submitted or that he submitted it to conceal fraud. Defendant denies the remaining allegations in Paragraph 140.

141. Defendant admits that a medical authorization was attached to Hammond's affidavit. Defendant denies knowingly presenting an altered document. Defendant lacks

knowledge or information sufficient to form a belief about the asserted ink, signature, and alteration analysis without the original or a reliable complete copy and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 141.

142. Defendant admits that Judge Hall ordered Hammond's deposition but denies that he represented Hammond at that deposition. Defendant represented the plaintiff in that case at the deposition. Defendant denies the remaining allegations in Paragraph 142.

143. Defendant admits that Hammond testified at the March 18, 2022 deposition about when he began dust mask work. Defendant denies knowing at the time that the testimony was false. Defendant lacks knowledge or information sufficient to form a belief about Hammond's alleged intent and therefore denies that allegation. Defendant denies the remaining allegations in Paragraph 143.

144. Defendant admits that he stated that one February 2020 intake form existed and that he had earlier received a typed 2018 questionnaire. Defendant denies that he knowingly made a false statement about the available dust mask intake records or intentionally withheld evidence to conceal fraud. The remaining allegations in Paragraph 144 are denied.

145. Defendant admits that Judge Hall's March 9, 2023 order found Hammond's affidavit materially false, granted summary judgment to 3M, and dismissed Individual 74's claims with prejudice. Defendant denies that the order establishes his knowledge of falsity before the later discovery of undisclosed records. Defendant denies the remaining allegations in Paragraph 145.

146. Defendant admits that he defended the affidavit's accuracy in court based on

the information then available to him. Defendant denies that he then knew it was false or defended it to protect an unlawful scheme. Defendant denies the remaining allegations in Paragraph 146.

147. Defendant admits that he and Givens participated in the other litigation described. Defendant denies knowingly submitting a false affidavit, concealing false testimony, or withdrawing a filing to evade detection of fraud. Defendant lacks knowledge or information sufficient to form a belief about every statement and act attributed to other persons and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 147.

148. Defendant admits that 3M incurred defense expenses in Individual 74's case. Defendant lacks knowledge or information sufficient to form a belief about the amount. Defendant denies that he fraudulently caused recoverable injury to 3M. Defendant denies the remaining allegations in Paragraph 148.

149. Defendant admits that a message containing the words "hurting our clients with real claims because so many are frivolous" is a portion of a text sent from a Martin iPhone. The iPhone screen reads that the message was unsent. 3M counsel never notified Martin of the intercepted message. Defendant denies that the message admitted knowing prosecution of fraudulent or procedurally frivolous claims. Defendant admits that appearances and representation continued in some matters before he later sought withdrawal, but denies that he thereby knowingly continued fraudulent claims. The remaining allegations in Paragraph 149 are denied.

150. Defendant admits that he appeared in the Mitchell case after the text message.

Defendant admits expressing disagreement with Hammond's broader pleading and case-selection practices. Defendant denies that he knew the Mitchell action contained fraudulent claims. Defendant denies the remaining allegations in Paragraph 150.

151. Defendant admits that he described Hammond as over-pleading cases he would not ordinarily prosecute. Defendant admits using "frivolous" with the expressly stated qualification that it referred to his own standard of what he wished to prosecute, not frivolousness under the rules of civil procedure. He testified that other lawyers could reasonably disagree and that claims for other occupational lung conditions could be valid. Defendant denies any broader characterization of that testimony or admission that he knowingly prosecuted fraudulent claims. Defendant denies the remaining allegations in Paragraph 151.

152. Defendant admits that applicable professional rules prohibit knowingly presenting false facts and pursuing claims forbidden by those rules. Defendant lacks knowledge or information sufficient to form a belief about the exact quoted wording and date of the 2009 testimony without that transcript and therefore denies those details. Defendant denies the remaining allegations in Paragraph 152.

153. Defendant denies Paragraph 153 in its entirety.

154. Defendant admits that motions sought dismissal without prejudice of 43 claims in the three identified proceedings in January 2023. Defendant denies that the motions were filed to bargain away known fraudulent claims or conceal a scheme. Defendant lacks knowledge or information sufficient to form a belief about every precise date, listed claimant, and transmission detail without the motions and therefore denies

those details. Defendant denies the remaining allegations in Paragraph 154.

155. Defendant admits that the January 2023 motions stated the identified plaintiffs lacked a formal CWP diagnosis and that the underlying complaints alleged occupational lung disease. Defendant denies that this establishes knowing falsity at filing, absence of every other pleaded lung condition, or his participation in fraud. The remaining allegations in Paragraph 155 are denied.

156. Defendant admits that some claims involved deceased workers or estates and that estate authority and diagnosis issues were addressed in his investigation. Defendant denies that the later investigation establishes knowledge of defects in the cases when he undertook representation or that any claims were knowingly fraudulent at filing. Defendant lacks knowledge or information sufficient to form a belief about every claimed death and elapsed time without the records and therefore denies those details. Defendant denies the remaining allegations in Paragraph 156.

157. Defendant admits that he testified dismissal was appropriate based on the information developed by January 2023. Defendant denies that he admitted all 43 cases were knowingly invalid when originally filed or should never have been filed on the information then available. He testified that the initial filings complied with Rule 11 and professional duties based on available information and that further investigation disclosed grounds for dismissal. The remaining allegations in Paragraph 157 are denied.

158. Defendant admits that 3M opposed the motions seeking dismissals without prejudice and requested explanations. Defendant denies that the quoted accusations establish misrepresentation or fraud by him. Defendant denies the remaining allegations

in Paragraph 158.

159. Defendant lacks knowledge or information sufficient to form a belief about the exact alleged communication by Givens and therefore denies denies the allegations in Paragraph 159.

160. Defendant admits that motions to withdraw dismissal requests were filed on February 15, 2023 after 3M opposed the requests. Defendant denies that the withdrawal was intended to re-bury fraudulent claims or evade disclosure of a scheme. Defendant denies the remaining allegations in Paragraph 160.

161. Defendant denies Paragraph 161 in its entirety.

162. Defendant denies Paragraph 162 in its entirety.

163. Defendant admits the March 9, 2023 dismissal and that he previously defended Hammond's affidavit based on the information available to him at the time. Defendant denies that he knowingly assisted a materially false affidavit or shifted blame to conceal his own fraud. Defendant denies the remaining allegations in Paragraph 163.

164. Defendant admits that in March 2023 he reported concerns about false or undisclosed information and sought stays in the proceedings identified. Defendant denies the March 24, 2022 date stated in the first sentence; the described hearing and stay activity occurred in March 2023. Defendant admits the filing of stay motions but denies the characterization that he filed them to distance himself from his own unlawful scheme or that every listed claim was fraudulent. Defendant denies the remaining allegations in Paragraph 164.

165. Defendant denies Paragraph 165 in its entirety.

166. Defendant admits that stay filings described discovery in March 2023 of paper materials that differed from the electronic records previously supplied by Hammond's office and concerns about undisclosed dust mask intakes and contracts. Defendant denies that he knowingly made false statements about those discoveries. Defendant denies the remaining allegations in Paragraph 166.

167. Defendant admits that the stay motions expressed a good-faith concern that Hammond may have concealed material limitations information in other cases. Defendant denies that this was an admission that Defendant himself knowingly filed or prosecuted fraudulent claims. The remaining allegations in Paragraph 167 are denied.

168. Defendant admits that he reported concerns about expired limitations in other claims at the March 24, 2023 hearing. Defendant denies that those statements establish his earlier knowledge of concealed information or participation in fraud. Defendant denies the remaining allegations in Paragraph 168.

169. Defendant denies Paragraph 169 in its entirety.

170. Defendant admits possessing a spreadsheet containing client information. Defendant denies the remaining allegations in Paragraph 170.

171. Defendant admits that he visited Hammond's office for client meetings and litigation activity. Defendant denies the remaining allegations in Paragraph 171.

172. Defendant admits that he had seen Hammond's file room, understood that Hammond maintained paper records, and that Martin's paralegal visited the office in January 2023. Defendant denies that those facts establish that he knew before March 2023 of the particular undisclosed original dust mask case materials or alterations later

discovered. Defendant denies 3M's characterization that his prior awareness of paper files establishes knowing falsity in his later statements about undisclosed original materials. Defendant lacks knowledge or information sufficient to form a belief about Hammond's July 2025 statements and therefore denies those allegations. Any remaining allegations in Paragraph 172 are denied.

173. Defendant admits that he sought records from Hammond for the March 2022 deposition and provided materials to 3M. Defendant denies that possession or review of those specific materials established his awareness of other materials. Defendant denies that his affidavit of March 24, 2023, knowingly misrepresented his discovery or concealed fraud. Defendant denies the remaining allegations in Paragraph 173.

174. Defendant admits that he and Givens met with Individual 74 and other clients in March 2023 to discuss newly discovered limitations and concealment concerns. Defendant denies that the explanations were knowingly false or intended to conceal his own involvement in a fraudulent scheme. Defendant denies the remaining allegations in Paragraph 174.

175. Defendant admits that some other dust mask proceedings resulted in adverse rulings or verdicts. Defendant denies that those outcomes establish he knowingly filed false facts or participated in fraud. Defendant lacks knowledge or information sufficient to form a belief about every quoted record, precise date, and witness statement without the complete records and therefore denies those details. Defendant denies the remaining allegations in Paragraph 175.

176. Defendant admits that 3M sought leave for sanctions-related discovery in

Individual 74's case. Defendant denies that the request establishes sanctionable or fraudulent conduct by him. Defendant denies the remaining allegations in Paragraph 176.

177. Defendant admits there was an April 4, 2023 hearing before Judge Hall. Defendant denies any allegation about Judge Hall's statements to the extent they are inconsistent with the record. Defendant denies the remaining allegations in Paragraph 177.

178. Defendant admits that he sought withdrawal from numerous Hammond related matters in April 2023 and did not obtain dismissal with prejudice of every claim before withdrawing. Defendant denies that he abandoned clients to conceal wrongdoing or withheld known material information from them. Defendant denies the remaining allegations in Paragraph 178.

179. Defendant admits that withdrawal motions were filed in multiple Hammond related matters in six Kentucky counties. Defendant denies the remaining allegations in Paragraph 179.

180. Defendant admits that withdrawal motions stated stays would no longer be necessary and that Hammond would continue representing clients. Defendant denies that these statements were knowingly false or that withdrawal was intended to avoid discovery of his own fraudulent conduct. Defendant denies the remaining allegations in Paragraph 180.

181. Defendant denies Paragraph 181.

182. Defendant admits that withdrawal filings addressed the absence of a completed additional referral agreement and the circumstances of his name appearing on original complaints. Defendant denies a categorical assertion that he never represented

plaintiffs in later cases. Defendant denies the remaining allegations in Paragraph 182.

183. Defendant admits that he sought stays and participated in later cases before seeking withdrawal. Defendant denies that he knowingly misrepresented whom he represented or used representation to further or conceal fraud. Defendant denies the remaining allegations in Paragraph 183.

184. Defendant admits that he filed appearances, handled discovery, and represented witnesses in matters beyond the first complaint. Defendant denies that he acted to control false testimony or concealed culpability by later withdrawing. Defendant lacks knowledge or information sufficient to form a belief about every quoted deposition exchange without those transcripts and therefore denies the exact quotations. Defendant denies the remaining allegations in Paragraph 184.

185. Defendant admits that he and Givens performed legal work in later Hammond-related cases, including appearances, discovery, motions, and withdrawal activity. Defendant denies that their participation establishes a fraudulent enterprise or knowingly false representation. Defendant lacks knowledge or information sufficient to form a belief about every precise date, filing description, and act attributed to another person without the records and therefore denies those details. Defendant denies the remaining allegations in Paragraph 185.

186. Defendant admits that his June 5, 2023 response described assistance with approximately 800 Kentucky dust mask cases, that he had not withdrawn from every Hammond-associated case, and that election letters were used for certain clients. Defendant denies that this description expanded the attached list in the May 2020 written

referral agreement or establishes fraudulent representation. The remaining allegations in Paragraph 186 are denied.

187. Defendant denies Paragraph 187 in its entirety.

188. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 188 and therefore denies them. Defendant denies he participated in any concealment of fraudulent scheme.

189. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 189 and therefore denies them.

190. Defendant lacks knowledge or information sufficient to form a belief about Hammond's alleged concealment or purposes and therefore denies those allegations. Defendant admits that 3M sent a preservation demand in March 2023. Defendant denies that he hid files, directed concealment, or knowingly participated in obstruction. Any remaining allegations in Paragraph 190 are denied.

191. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 191 and therefore denies them.

192. Defendant lacks knowledge or information sufficient to form a belief about every alleged act, statement, date, and purpose attributed to Hammond in Paragraph 192 and therefore denies those allegations. Defendant denies that he participated in the alleged concealment or fraudulent scheme.

193. Defendant lacks knowledge or information sufficient to form a belief about every alleged act, statement, date, and purpose attributed to Hammond in Paragraph 193 and therefore denies those allegations. Defendant denies that he participated in the alleged

concealment or fraudulent scheme.

194. Defendant admits that 3M filed a verified Rule 202 petition in Texas in March 2023 and that, after briefing and a hearing, the court authorized depositions and document production on June 2, 2023. Defendant denies that the order adjudicated fraud liability or established the truth of 3M's allegations. Defendant lacks knowledge or information sufficient to form a belief about 3M's internal motives or claimed caution and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 194.

195. Defendant admits that he sought mandamus and protective relief, requested sanctions against 3M, and that the identified requests were denied. Defendant admits that discovery ultimately occurred. Defendant denies that seeking judicial relief was an attempt to evade lawful obligations, obstruct investigation, or conceal fraud. Defendant denies the remaining allegations in Paragraph 195.

196. Defendant denies Paragraph 196 in its entirety.

197. Defendant admits that litigation communications included mail, email, and electronic filings across state lines. Defendant denies that his communications knowingly contained false statements or furthered a fraudulent enterprise. Defendant denies the remaining allegations in Paragraph 197.

198. Defendant admits that he used mail and electronic communications in the representation of clients. Defendant denies that each such use, or any use by him alleged here, constituted a RICO predicate act. Defendant denies the remaining allegations in Paragraph 198.

199. Defendant denies Paragraph 199 in its entirety.

200. Defendant denies the first sentence in Paragraph 200. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of Paragraph 200 and therefore denies them. Defendant further denies he was part of any furtherance of any conspiracy.

201. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 201 and therefore denies them.

202. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 202 and therefore denies them.

203. Defendant denies Paragraph 203 in its entirety.

204. Defendant admits that he participated in Kentucky litigation and interstate communications with counsel and clients. Defendant denies committing racketeering acts, knowingly joining fraudulent complaints, or agreeing to an unlawful objective. Defendant denies the remaining allegations in Paragraph 204.

205. Defendant admits that 3M incurred litigation expenses in the dust mask matters. Defendant lacks knowledge or information sufficient to form a belief about the amount or 3M's internal reliance and therefore denies those allegations. Defendant denies that he proximately caused a legally recoverable injury through fraud or racketeering. Defendant denies the remaining allegations in Paragraph 205.

206. Defendant incorporates his responses to the paragraphs re-alleged in Paragraph 206. Defendant denies that incorporation establishes any liability or entitlement to relief against him.

207. Defendant admits professional relationships, referral and fee arrangements, and joint legal work with Hammond and Givens. Defendant denies that those relationships formed an unlawful association-in-fact enterprise, had the fraudulent purpose alleged, or continue as an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 207.

208. Defendant admits the parties' locations stated in Paragraph 208 and that litigation involved resources and communications across state lines. Defendant denies that the activity constituted an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 208.

209. Defendant admits that he made litigation decisions in matters he handled as counsel. Defendant denies managing, operating, or knowingly carrying out decisions of an unlawful enterprise. Defendant denies the remaining allegations in Paragraph 209.

210. Defendant denies Paragraph 210 in its entirety.

211. Defendant denies Paragraph 211 in its entirety.

212. Defendant denies Paragraph 212 in its entirety.

213. Defendant denies Paragraph 213 in its entirety.

214. Defendant denies Paragraph 214 in its entirety.

215. Defendant denies any implication that he violated mail and wire fraud statutes. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 215 and therefore denies them.

216. Defendant denies Paragraph 216 in its entirety.

217. Defendant incorporates his responses to the paragraphs re-alleged in

Paragraph 217. Defendant denies that incorporation establishes any liability or entitlement to relief against him.

218. Defendant denies Paragraph 218 in its entirety.

219. To the extent a response remains required following dismissal of Count III of the Amended Complaint, defendant incorporates his responses to the paragraphs re-alleged in Paragraph 219. Defendant denies that incorporation establishes any liability or entitlement to relief against him. Defendant denies the state-law claim and any entitlement to relief against him.

220. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant denies making materially false representations to 3M knowingly or recklessly. Defendant denies the remaining allegations in Paragraph 220. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

221. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant denies that he knowingly or recklessly submitted false allegations about diagnoses, product use, or limitations. Defendant lacks knowledge or information sufficient to form a belief about every claimant's knowledge or earlier consultation with Hammond and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 221. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

222. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant admits that diagnosis, product identification, and

limitations can be material to an individual claim. Defendant denies that the categorical legal conclusions pleaded establish fraud or liability by him. Defendant denies the remaining allegations in Paragraph 222. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

223. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant denies the allegations in Paragraph 223. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

224. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant denies the remaining allegations in Paragraph 224. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

225. To the extent a response remains required following dismissal of Count III of the Amended Complaint, Defendant denies the allegations in Paragraph 225. Defendant denies the state-law claim in Count III of the Amended Complaint and any entitlement to relief against him.

226. To the extent a response remains required following dismissal of Count IV of the Amended Complaint, defendant incorporates his responses to the paragraphs re-alleged in Paragraph 226. Defendant denies that incorporation establishes any liability or entitlement to relief against him. Defendant denies the state-law claim in Count IV of the Amended Complaint and any entitlement to relief against him.

227. To the extent a response remains required following dismissal of Count IV

of the Amended Complaint, Defendant admits that he agreed to work with other counsel on client claims. Defendant denies an unlawful agreement to defraud 3M, knowing falsity, or reckless indifference to fraudulent claims. Defendant denies the remaining allegations in Paragraph 227. Defendant denies the state-law claim in Count IV of the Amended Complaint and any entitlement to relief against him.

228. To the extent a response remains required following dismissal of Count IV of the Amended Complaint, Defendant denies the allegations in Paragraph 228. Defendant denies the state-law claim in Count IV of the Amended Complaint and any entitlement to relief against him.

229. Defendant denies that Plaintiff is entitled to any relief from Defendant, including but not limited to any relief described in the "Requested Relief" section of the Amended Complaint.

230. Defendant denies any allegation in the Amended Complaint not expressly admitted herein.

## I. AFFIRMATIVE DEFENSES

**Defenses pleaded in the alternative.**

231. Defendant Michael B. Martin incorporates his preceding responses and asserts the following defenses and affirmative defenses, separately and in the alternative, under Federal Rules of Civil Procedure 8(b), 8(c), and 8(d). Their assertion does not admit any allegation of wrongdoing, agreement, agency, injury, or damages.

**Protected petitioning and Noerr-Pennington immunity.**

232. To the extent 3M seeks to impose liability for Defendant's genuine petitioning

activity or conduct incidental to it, its claims are barred by the First Amendment and the Noerr-Pennington doctrine. Defendant undertook representation to obtain relief for clients based on information he understood to support their claims, evaluated available records and client information, and sought dismissal of claims or defendants when further investigation warranted dismissal.

**Failure to mitigate damages and avoidable consequences.**

233. Without admitting liability, Defendant asserts that 3M may not recover damages it could reasonably have avoided. Defendant established and communicated a program for evaluating and dismissing claims or defendants, and sought dismissals without prejudice in January 2023. To the extent 3M thereafter unreasonably incurred or increased expenses that could have been avoided through available dismissals or other reasonable measures, while preserving its legitimate litigation and discovery interests, its damages must be reduced by the proven avoidable amount.

**Good faith and absence of fraudulent or corrupt conduct.**

234. Defendant denies that he acted with an intent to defraud, with reckless disregard of materially misleading information, or with corrupt intent. Defendant evaluated claims and sought appropriate corrective action when new information disclosed grounds for dismissal or concerns about undisclosed records.

**Absence of unlawful agreement.**

235. Defendant denies agreeing to an unlawful enterprise or a conspiracy to violate RICO. Defendant denies authorizing, directing, knowingly joining, or ratifying the alleged fabrication, concealment, or other racketeering conduct of Hammond or others. Defendant

also denies responsibility for acts attributed to him after his representation and involvement ended.

**Causation and proof of recoverable loss.**

236. Defendant denies that 3M sustained a compensable business or property injury directly and proximately caused by any action attributable to him. Defendant denies that the entire cost of defending the 850-plus-claim inventory is recoverable merely because 3M challenges a subset of claims. Defendant denies that Plaintiff has proved actual injury to its business or property by reason of a violation of § 1962.

**Good-faith reliance on supplied information.**

237. In undertaking his work, Defendant relied on information supplied by referring counsel, personnel in Hammond's office, claimants, and available records, including representations concerning the completeness and accuracy of the materials provided. Defendant denies knowing that any particular representation on which he relied was false when he relied on it. His reliance and subsequent investigation are asserted as facts negating fraudulent knowledge, intent, and knowing participation, rather than as a categorical exemption from his professional duties.

**No fabrication, coaching of false testimony, or fraudulent concealment.**

238. Defendant denies fabricating diagnoses, mask-use histories, intake dates, affidavits, or other evidence; instructing any claimant or witness to testify falsely; knowingly submitting fabricated evidence; or corruptly concealing records. Defendant disputes Plaintiff's characterization of witness preparation, discovery responses, dismissal efforts, and withdrawal proceedings as components of a fraudulent scheme. Each

challenged act must be assessed using its actual content, timing, context, and Defendant's knowledge at the time.

**No automatic attribution of another person's acts.**

239. Defendant denies authorizing every complaint or other act attributed collectively to the Defendants, including particular filings on which Hammond placed Defendant's or his firm's name without prior approval. The appearance of Defendant's name on a pleading, professional association with another lawyer, or later participation in a case does not alone establish knowing authorization or ratification of fraud. Defendant denies that another person's alleged wrongdoing is attributable to him absent proof of a legally sufficient basis for such attribution and the elements required by the applicable claim.

**No actionable mail-fraud or wire-fraud predicates.**

240. Plaintiff cannot recover under Count I without proving qualifying predicate offenses attributable to Defendant. Defendant denies a scheme to obtain money or property by material fraud, the required intent, and qualifying uses of the mails or interstate wires in execution of such a scheme. Ordinary use of mail, electronic filing, email, or interstate communications in legal work does not alone establish an offense. Defendant disputes both the alleged falsity and materiality of the particular representations attributed to him and whether the identified communications furthered an actionable scheme.

**No obstruction-of-justice predicates attributable to Defendant.**

241. The alleged concealment of original files in paragraphs 200-202 and 215 is

attributed specifically to Hammond. Defendant denies participating in, authorizing, knowingly assisting, or agreeing to corrupt concealment of those files. Defendant further denies proof of the elements of any obstruction offense attributed to him, including the required culpable state of mind, qualifying proceeding, and nexus to that proceeding under the particular statute invoked. He disputes liability based solely on lawful discovery objections, protective-order requests, mandamus proceedings, or other requests for judicial relief.

**Failure to establish a RICO enterprise and distinctness.**

242. Defendant denies that Plaintiff can establish the alleged association-in-fact enterprise under 18 U.S.C. § 1961(4), including the asserted common purpose, relationships, and longevity sufficient to pursue that purpose. Defendant also denies that Plaintiff can establish the distinction required between the RICO person and the enterprise under § 1962(c). Ordinary co-counsel relationships and coordinated representation do not alone establish the particular enterprise and fraudulent purpose alleged. Defendant does not contend that an association-in-fact must possess a formal hierarchy or organizational chart.

**No operation or management of enterprise affairs through racketeering.**

243. Defendant denies conducting or participating in the operation or management of the alleged enterprise's affairs through a pattern of racketeering activity. Legal services, participation in underlying proceedings, or association with alleged enterprise members does not alone establish the requisite participation under § 1962(c). Plaintiff must prove Defendant's role in directing or carrying out the affairs of the alleged enterprise through

qualifying racketeering activity, rather than rely solely on his work as counsel.

**No qualifying pattern or continuity.**

244. Defendant denies engaging in at least two qualifying predicate acts sufficient to establish a pattern under 18 U.S.C. §§ 1961(5) and 1962(c). Defendant also denies the required relationship and closed-ended or open-ended continuity. The number of underlying claims, repeated use of similar pleading language, and routine communications do not alone prove a pattern of criminal conduct. Defendant disputes any inference of a continuing threat of racketeering drawn from the continued existence of lawful underlying litigation.

**No RICO conspiracy or agreement to unlawful objectives.**

245. Defendant denies agreeing that he or another person would conduct an enterprise's affairs through a pattern of racketeering activity. Agreements to share legal work, investigate cases, represent clients, exchange records, negotiate settlements, or seek dismissals do not alone establish an agreement to violate § 1962(c). Defendant denies knowing adoption of the alleged scheme's unlawful objectives. As to Count II, Plaintiff must also establish an injury caused by an act of racketeering or an otherwise unlawful act within the governing civil-RICO conspiracy standard; an asserted agreement or nonactionable act alone is insufficient.

**No direct and proximate causal connection.**

246. Defendant denies that an actionable RICO violation attributable to him directly and proximately caused the losses Plaintiff claims. Plaintiff must establish the causal connection between qualifying conduct and each claimed injury. Defendant

disputes losses arising from legitimate claims, necessary defense work that would have occurred independently of the alleged wrongdoing, acts outside any agreement proved against him, and expenses attributable to independent decisions or other causes. Defendant's causation defense does not depend on imposing a requirement that Plaintiff itself relied on every alleged fraudulent representation.

**Termination of association and limits on later conduct.**

247. Defendant's investigation, dismissal efforts, efforts to sever his relationship with Hammond, withdrawal motions, and grievance concerning Hammond's conduct contradict Plaintiff's allegation of continuing knowing participation. Defendant denies that later alleged wrongdoing by others falls within any unlawful agreement attributable to him. To the extent legally relevant, Defendant asserts his affirmative repudiation and cessation of participation. Withdrawal from representation alone is not asserted to erase liability for any earlier conduct that Plaintiff actually proves.

**Statute of limitations and opposition to tolling.**

248. To the extent Plaintiff discovered or reasonably should have discovered a particular claimed injury outside the applicable four-year civil-RICO limitations period before commencement of this action, recovery for that injury is barred. Defendant disputes any contention that accrual required discovery of the full alleged scheme or pattern. Defendant denies fraudulently concealing a claim from Plaintiff and contests tolling where its required elements, including diligence, are absent. Later alleged acts do not automatically revive previously time-barred injuries. Defendant does not assert that the date an underlying dust-mask complaint was filed, by itself, determines accrual of

Plaintiff's RICO claim.

**Waiver.**

249. To the extent Plaintiff, through authorized counsel, knowingly agreed to, encouraged, or accepted a particular dismissal procedure and thereby intentionally relinquished a right inconsistent with that procedure, Defendant asserts waiver and consent as to that right. The defense concerns the dismissal program and resulting avoidable expenses; it does not assert that consent to dismissals constituted consent to fraud or a general release of RICO liability.

**Equitable estoppel concerning authorized representations.**

250. To the extent Plaintiff, through authorized counsel, made representations or commitments concerning the dismissal program on which Defendant reasonably relied to his detriment, Plaintiff is estopped from taking an inconsistent position to the extent the applicable elements of equitable estoppel are established.

**Segregation and limitation of damages.**

251. Plaintiff must prove a legally sufficient basis to identify and allocate the losses caused by the alleged racketeering. Defendant disputes recovery of the entire cost of defending all underlying claims merely because some claims are alleged to have been fraudulent. Costs attributable to legitimate claims, work unrelated to an actionable violation, speculative amounts, duplicative work, and unreasonable expenditures are not recoverable absent the required causal and legal showing. Joint-and-several liability is denied unless Plaintiff establishes its legal and factual prerequisites.

**Limits on fees, trebling, punitive damages, and disgorgement.**

252. Plaintiff's requests for fees, treble damages, punitive damages, and alleged ill-gotten gains are limited to remedies authorized by a surviving claim. Fees for prosecuting this RICO action, if recoverable under § 1964(c), must satisfy the applicable statutory standard and are not automatically part of the underlying compensatory injury to be trebled. Section 1964(c) does not itself create a separate punitive-damages remedy in addition to its prescribed relief. Defendant disputes any independent right to recover his or others' gross receipts or profits without proof of an authorized remedy and its prerequisites, and denies recovery of amounts unrelated to a proven violation.

**Opposition to injunctive and other equitable relief.**

253. Defendant contests the availability of the requested private equitable remedies under the applicable statutory and decisional law. Alternatively, Plaintiff has not established irreparable injury, inadequacy of legal remedies, a sufficient threat of future unlawful conduct by Defendant, or the other prerequisites for an injunction. Any relief must be properly tailored and may not impermissibly restrict protected petitioning, lawful representation, or the rights of persons not before the Court.

## II. COUNTERCLAIMS

Counterclaimant Michael B. Martin, by and through his attorneys of record, brings counterclaims against Counter-Defendant 3M Company, and states as follows:

### A. INTRODUCTION

> "The obligation of the legal profession is to serve as healers of human conflicts... Trial by combat belongs to the Middle Ages. Cooperation and procedural agreements between counsel are not concessions; they are the oil that keeps the machinery of justice moving."

Chief Justice Warren E. Burger

254. 3M's RICO lawsuit against Martin constitutes sham litigation which lacks any factual basis for the inflammatory allegations it makes to destroy the reputation of Martin and scupper the respirator product liability cases brought by coal miners. 3M's RICO lawsuit is not brought to protect against unsubstantiated "racketeering acts" or "fraud" allegedly committed against it. Rather, 3M sues Martin for ulterior purposes to intimidate him and chill his representation of coal miners bringing product liability suits against 3M related to its 3M 8710 and 8210 respirators. 3M's conduct constitutes an abuse of process, as that term is defined by Kentucky law.

### B. PARTIES

255. Defendant/Counter-Plaintiff, Michael Martin, is now and at all times hereinafter mentioned a resident of Galveston County, Texas.

256. Plaintiff-Counter-Defendant, 3M Company ("3M"), is a foreign corporation with its principal place of business in Minnesota. 3M may be served by and through its registered agent: Corporation Service Company, 421 West Main Street, Frankfort,

Kentucky 40601.

### C. JURISDICTION AND VENUE

257. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over 3M's federal Racketeer Influenced and Corrupt Organizations Act claims arising under 18 U.S.C. § § 1961 *et seq.*

258. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a) because these Counterclaims are so related to 3M's federal Racketeer Influenced and Corrupt Organizations Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

259. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that give rise to the claims occurred in this district.

### D. FACTUAL STATEMENT

260. Mike Martin has been handling silicosis and respirator product liability cases for forty years. Martin has served in leadership positions in multi-district-litigation courts over silicosis cases. Martin has taught ethics, as part of a continuing legal education credit course approved by the State Bar of Texas, teaching lawyers on the appropriate procedures in handling multi-party toxic tort cases. In 2006, Martin was asked by the United Stated Senate Judiciary Committee, Arlen Spector, Chair, to provide expert testimony to Congress on the preliminary medical requirements required for the prosecution of multi-party toxic tort cases, including silicosis. Martin has provided testimony to the Texas Legislature relating to the appropriate medical requirements to be followed in filing silicosis cases. He

continues to periodically serve on continuing legal education faculties regarding the proper and ethical handling of silicosis cases.

261. In 2005, Martin was serving as chair of the Texas silicosis multi-district-litigation court, plaintiffs steering committee. During this period, Texas was dealing with thousands of silicosis cases having been filed across the state. Martin served as the leader, on behalf of plaintiffs, to create a "gatekeeping" process. Martin advocated that defendants not be required to defend cases that were not medically supported based upon the International Labor Organization diagnostic criteria for the diagnosis of silicosis. Martin advocated a "gatekeeper requirement" that would preclude any defendant from having to respond to a lawsuit that did not meet these minimum medical requirements.

262. During that same Texas MDL process, 3M Company sat on the defendants' steering committee. In 2005, before any Texas legislative changes in silicosis litigation had occurred, Martin and 3M Company counsel reached an agreement that 3M, and other defendants, be protected from defending cases that did not meet minimum "gatekeeping" requirements which plaintiffs would be required to meet. Martin advocated that defendants not be put in any position of having to defend cases that were not medically supportable or not fully developed. Moreover, because these diseases involve latent occupational injuries, Martin advocated that allowing dismissals without prejudice of prematurely filed cases would continue to preserve the plaintiffs' rights while concurrently protecting defendants. In occupational toxic tort cases, lawyers are often required to file cases before having a chance to perform complete a full medical investigation because of statute of limitation deadlines. Martin sought and crafted a solution to this issue by preventing any case from

moving forward that did not satisfy minimum medical requirements by allowing for dismissal without prejudice before a defendant would have to expend any resources defending the case. 3M agreed with Martin's 2005 proposals.

263. Martin has consistently advocated that it was not in the best interest of the plaintiff victim nor the respirator defendant to prosecute a case that had not met "gatekeeping" limitations requiring 1) an acceptable medical diagnosis and 2) acceptable product use in the absence of unforeseeable misuse. In individual cases filed by Martin across the United States, Martin had readily dismissed 3M Company in cases that did not meet the above stated criteria. Martin followed that practice in Texas, and more recently, by way of example, in other states such as Alabama, and Georgia, Martin had preliminarily dismissed 3M from silicosis cases in those states where the plaintiffs identified the 3M 8710 and 8210 as ones they used but did not use these masks for a sufficient period of time to support causation. 3M always readily agreed to such dismissals and never, over 30 years of litigation with Martin, accused him of fraudulently filing any case.

264. 3M counsel had previously entered into pre-trial dismissal agreements with Martin in Texas and knew that Martin would likely take this approach to any Kentucky litigation if he were to become involved. Martin had a longstanding practice with 3M Company to dismiss 3M from any case in which sufficient causation proof could not be marshaled, for whatever reason. Martin believed he had built a relationship of trust with 3M based upon his proposals and conduct in the Texas MDL dating back 30 years.

265. In 2020, Martin was introduced to Glenn Hammond. Martin had been practicing law for thirty-four years, now licensed both in Kentucky and Texas, and had

gained a reputation as an expert in respirator product liability cases and silicosis. Hammond called Martin and asked Martin if he would be willing to assist Hammond in prosecuting a product liability case that Hammond had already filed against 3M, American Optical, Mine Safety Appliances, and Kentucky Mine Services. That case was *Randy Adams, et al. v. 3M Company, et al.,* C.A. No. 20-CI-382, Division II, Kentucky Pike Circuit Court (the Randy Adams case). Martin had no involvement in client intake in the Randy Adams case. When Martin was approached by Hammond, Martin explained to Hammond that he would not assist in cases with lesser injuries, such as chronic obstructive pulmonary disease (COPD). While such cases are valid under Kentucky law, Kentucky case law further directed that plaintiffs had the option to wait and file their case once a more advanced stage of disease had developed, such as coal workers pneumoconiosis (CWP). On these terms, on May 5, 2020 Martin agreed to aid Hammond in prosecuting CWP cases only. Martin's agreement was limited to providing legal assistance in the Randy Adams case.

266. Under Kentucky procedural law, Rule 54.02(1) of the Kentucky Rules of Civil Procedure provided specific authority for the filing of claims involving multiple parties. The rule gives specific authority for Kentucky Courts to handle and manage multiple party cases and to grant final relief to one or more of the parties without termination of the entire action. Under the rule, a listed plaintiff in the complaint may not be asserting causes of action against every defendant. Global pleading under Rule 54.02 did not require that the parties ultimately plead more specifically as to each plaintiff identifying product use and years of exposure.

267. Accordingly, when Martin became involved in the Randy Adams case, he proposed, through a pretrial agreement with 3M and the other defendants, a process similar to one he had advocated in the Texas silica MDL, which would require certain evidentiary proof exist before any defendant would have to expend any resources to defend a case. In this regard, Martin proposed a pretrial agreement whereby plaintiffs would dismiss any plaintiff as early as practical against any defendant where plaintiff did not 1) use the product in question or 2) any other reasons which would justify dismissal of a case before any defendant would have to engage in any expense to defend a case.

268. In meetings with 3M and other defendants, Martin and these parties readily agreed to a proposal by Martin that plaintiffs' cases should be subject to early dismissal before any party incurred unnecessary costs. Thus, Martin entered into a pretrial agreement with the defendants to allow cases to be dismissed early against any defendant either because 1) the plaintiff did not use the product 2) investigation discovered the plaintiff had facial hair 3)investigation discovered that the plaintiff did not have a clinical diagnosis of pneumoconiosis, but rather a lesser diagnosis of COPD 4) investigation discovered that an affirmative defense of limitations would likely be sustained or 5) investigation revealed other reasons not known at the time of filing. The defendants, including 3M, agreed to this approach.

269. It is in the context of this pretrial dismissal procedure, agreed upon by 3M, 3M's "RICO" claims against Martin are wholly unfounded and frivolous, sham litigation.

**FORMULATION, CODIFICATION AND RATIFICATION OF THE PRETRIAL DISMISSAL AGREEMENT**

270. Because the timing of the COVID-19 pandemic limited travel at the time, Martin asked Hammond to electronically provide him with case files for the Randy Adams case and all its plaintiffs, which Hammond did. Martin understood the transmission to include full and complete files. After conducting a preliminary investigation into the Randy Adams case, Martin entered into an agreement to assist in the prosecution of the Randy Adams case on May 5, 2020. This agreement limited Martin's authority to assist in the clients listed in the Randy Adams matter only. On May 19, 2020, Martin filed a notice of appearance in the Randy Adams case.

271. As the case began to develop, with preliminary exchange of discovery, Martin proposed a meeting between plaintiff and defense counsel to discuss how to manage and best prosecute the Randy Adams case. On March 11, 2021, Martin arranged a Zoom meeting with all defense counsel for all the parties in attendance. This meeting was held, in anticipation of the first status conference to occur in the Randy Adams case on March 15, 2021.

272. Before the meeting was to occur, 3M counsel reached out to Martin on March 11, 2021 requesting that deposition dates for certain plaintiffs be discussed at the upcoming meeting that afternoon, expressing the position that "we need to make progress" with regard to discovery on these cases.

273. On that same day, March 11, 2021, before the meeting with all counsel was to occur, Martin responded to 3M counsel's request for depositions:

> I am happy to do that with one reservation. I cannot present a client until all the records are in. That may be the case in this group, I am not sure. *Second, if upon review of the records I*

> *determine a client did not consistently wear a mask or does not have CWP, I am going to dismiss the case. I just haven't had time to look at your list, but I suspect you would be in agreement with this approach.*

(emphasis added).

274. On March 11, 2021, 3M counsel responded to the Martin email relating to the proposed depositions expressing the following:

> Mike: The plaintiffs we listed are the ones for whom we already have substantial records. I am confident we have enough records to take their depositions – for example I confirmed that we have SSE printouts for each, either in their black lung records or from the SSA. *And of course, if you want to dismiss us in any case, we are always good with that. Maybe we can talk about a time frame for this process on today's call.*

(emphasis added).

275. On March 11, 2021, Martin responded to the 3M counsel email as follows:

> *I agree that we should talk schedules on that point. So far I have been doing dismissals the Friday before a deposition, and I should do better.*
>
> Not to use my health too much, but this is the first week where I have actually worked full days and I have been playing catch up. And, I am still on too much pain medicine. *But I agree, I need to look at your group and confirm dismissals. Sometimes I need a little time for client authorizations.*
>
> ***3M should expect that I won't do anything different from the way I have handled cases for the last 30 years and if 3M doesn't belong in a case, I would rather have you out sooner rather than allowing unnecessary expense for both of us.***

(emphasis added). Thus, on March 11, 2021, Martin placed 3M on notice that he would be prosecuting these cases with the same approach he had used dating back to 2005 with the Texas MDL, explaining to 3M that if it did not belong in a case, Martin would want 3M

out of the case sooner rather than allowing 3M to incur unnecessary expense. Martin followed up on this declared promise by incorporating an early dismissal of cases into a scheduling order as part of a pretrial agreement between the parties.

276. On March 11, 2021, a meeting was held among all defense counsel with plaintiffs' counsel Martin and Johnny Givens. As a result of Martin and 3M counsel's discussion earlier that day, Martin began the meeting stating that he wanted to create early dismissals for plaintiffs who 1) may not have sufficient product use, 2) may not have a strong enough diagnosis (i.e. COPD only) 3) wore a beard or other facial hair and/or 4) any other reason that might justify dismissal. Martin and Givens made clear to 3M at this meeting that neither Martin nor Givens had any intention of prosecuting any case against 3M that did not meet minimum requirements of 1) product identification 2) medical diagnosis and 3) the absence of product misuse. It was unanimously agreed between all the parties that plaintiffs' counsel should be afforded the opportunity to file early dismissals of cases that should not be prosecuted, for whatever reason, against any specific defendant to allow all parties to avoid unnecessary litigation costs. It was agreed by all the parties that an early dismissal deadline would be incorporated into all future scheduling orders.

277. On March 11, 2021, Martin was aware that Hammond was evaluating a second group of cases. Hammond had communicated to Martin that he had signed up additional clients. Martin had no involvement in the client intake for those cases. Martin explained to Hammond he did not want Hammond to file the second lawsuit but wanted the opportunity to review whatever new case Hammond may be considering. As a consequence of the discussions at the meeting with defense counsel on March 11, Martin

immediately issued instructions to Hammond regarding the limitations on this future potential litigation. Martin informed Hammond by email:

> Glenn,
>
> We had a conference call today with Defense counsel. This is what we agreed on with regard to the current group.
>
> 1) We will enter scheduling orders only on the plaintiffs set for trial,
> 2) We will create one hard date for completion of all the Plaintiffs deposition(s) *sic* in the group.
> 3) We did not agree on the first trial group – our position is the sickest guys go first. We will talk to the judge about that.
>
> I am nearing ready to file the second group next week. *I want to be careful not to file for people who are NOT diagnosed. For those people, a premature lawsuit will create SOL problems for them if they later contract CWP. We are seeing plenty of evidence that negative does not always stay negative. That is my concern and why we are reviewing the current intervention group so that we do not file lawsuits for people without a diagnosis. That has slowed us down a bit.*

(emphasis added). Martin was steadfast in his belief that defendants should not be defending lawsuits which did not involve use of their products or which involved an early diagnosis of COPD only.

278. On March 15, 2021, the status conference which had been the subject of discussion of the March 11, 2021 meeting between counsel was held in Division II, Pike Circuit Court. At this hearing, Martin explained that the parties had reached agreement on the dismissal of cases that did not warrant prosecution against a specific defendant for whatever reason. Martin explained that there had been a meeting the previous week and that "we agreed to basically a process on moving these cases forward." 3M Company was

the first to raise the issue to the Court, and Martin elaborated on the agreement by stating, in open court:

> The other thing that [3M counsel] said that I did want to kind of explain is that either – either we go to trial or maybe settle, *or a case is dismissed – and I've told the defendants this, and that this is the way I prosecute cases across the country. So this is – its very important to me that we don't waste anybody's money.*
>
> And so, *you know, if there is a Defendant in the case where a Plaintiff did not, for example, utilize any respiratory protection manufactured by that company, we try to make that determination as early as possible and practical and not – and so we'll – some dismissals will be coming across your desk, you know, now. In fact, I think that has already happened.*

(TR 13/15-14/5 (emphasis added)).

279. At this hearing, in concert with Martin's comments, 3M counsel expressed 3M's agreement with this plan:

> I think I agree with – with a lot of what Mr. Martin said. And you may want to take a – save this video clip for – for a lot of agreement between me and Mr. Martin over the course of things. But he's about right in what he says.

(Tr. 9 14/19). Thus, 3M agreed with and ratified Martin's pretrial proposal that early dismissals of cases which should *not* be prosecuted against 3M be incorporated into the pretrial order so that all defendants would be protected from defending against plaintiffs' cases in which those defendants did not belong.

280. The agreement that had been ratified on March 15, 2021 in open court was included in the first draft scheduling order circulated by defense counsel for MSA on March 31, 2021. That proposed order included the following language:

> On or before May 17, 2021, each plaintiff will dismiss any defendant respirator manufacturer(s) whose respirators were not used by the plaintiff or *against whom the plaintiff does not otherwise intend to pursue a claim.*

(emphasis added). As stated above, the clear intent of the dismissals was to ensure that no defendant was subject to litigation that would unnecessarily increase its costs. This agreement with 3M eliminated any notion that Martin was attempting to pursue inflated numbers of "frivolous" lawsuits against 3M, or any defendant, or to use large numbers of filings as pressure to manipulate defendants into a settlement negotiation.

281. Almost immediately after the March 11, 2021 meeting, Martin began filing motions to dismiss certain plaintiffs' claims even before the early dismissal agreement was codified into an order.

282. On April 26, 2021, 3M counsel wanted to know which cases to start noticing for depositions but knew that Martin was still in the process of dismissing cases, so 3M counsel wrote Martin: "If you have some you want to peel off please let me know." (in reference to additional dismissals). Again, 3M counsel acknowledged Martin's efforts to insulate 3M from having to defend against any cases that would potentially be dismissed, for whatever reason.

283. 3M then confirmed and ratified this dismissal procedure and the spirit of its application. On May 6, 2021, 3M counsel filed a pleading explaining the implementation of the Martin proposed pretrial agreement, and pointed out that such dismissal agreements are "typical" and "common" for this type of mass tort litigation:

> Good trial candidates are, at a minimum, cases with some reasonable probability of proceeding. Obviously, cases due to

> be dismissed or transferred from this Court do not qualify. *Nor do cases whose facts are so undeveloped that it is impossible to predict whether the case will proceed (and if so, against which Defendants). An un-deposed Plaintiff may not even identify a 3M product in his testimony, leading to a quick, voluntary dismissal of 3M. It happens all the time. There is no reason for 3M to dedicate trial preparation resources before deposition testimony from the Plaintiff erases this possibility.*

DE 66-5 (emphasis added). 3M counsel's description of the Martin pretrial agreement constituted a reaffirmation and/or ratification of the early dismissal procedure proposed by Martin and agreed to by 3M. Ratifying the procedure of dismissal of plaintiffs who did not have a claim against 3M, 3M knew, or in the exercise of reasonable care should have known, that Martin never intended to prosecute the large number of cases filed by Hammond. 3M knew that there was no effort to file sham cases against it and that Martin was not acting to inflate numbers of cases to perpetrate some type of fraud against 3M.

284. Martin relied upon the 3M representation on May 6, 2021. The May 6, 2021 pleading from 3M illustrated a meeting of minds between Martin and 3M on how these cases would be managed. By May 6, 2021, the *B. Adams* case had been filed. 3M was aware of the additional Hammond lawsuits on file and readily disclosed to the Court that, as an applicable description of coal mine litigation with Martin, that there was a process for a "quick voluntary dismissal of 3M" which "happens all the time." This description served to assure Martin that 3M had actual knowledge of Martin's intent not to pursue bulk filings against 3M unless those cases involved Plaintiffs who met the minimum criteria for prosecuting a lawsuit as previously described herein.

285. During this period, Martin had already commenced with dismissing cases

against certain defendants in a manner consistent with the 3M's description of quick voluntary dismissals. Out of the 66 cases originally filed by Hammond in the Randy Adams case, Martin had partially dismissed 29 plaintiffs and completely dismissed nine plaintiffs from the group.

286. Furthermore, upon the filing of the above referenced dismissals, 3M counsel never objected to these dismissals or asserted that the dismissals were improper for any reason. In fact, the dismissals were being implemented in accordance with the parties' agreement. Accordingly, 3M is estopped from claiming that these dismissals were for any other reason.

287. The agreement with 3M for early dismissals of cases against specific defendants was incorporated into every draft of a pretrial scheduling order circulated by the parties. The agreement was finally included in the scheduling order signed by the Honorable Keith Hall, Division II, Pike Circuit Court, on September 2, 2021. This same dismissal provision was later reaffirmed by the Eastern District of Kentucky, when it issued a schedule for "voluntary dismissals" based on lack of product usage or lack of injury. (DE 256).

288. At the outset of the Randy Adams case, 3M counsel had expressed complete agreement with Martin's plan that plaintiffs initiate dismissals early in a case, to reduce unnecessary costs. Likewise, 3M counsel agreed with Martin's proposal to try each case separately. Martin joined the Randy Adams case after it was filed. Martin had not been involved in client intake. Since joining the litigation, Martin had proposed, and 3M Company had agreed, that plaintiffs would initiate early dismissals where appropriate so

that no party incurred unnecessary expense. In this context, it would be impossible for Martin to have been engaged in a criminal enterprise to prosecute frivolous cases against 3M.

289. Even after the September 2, 2021 deadline for early dismissals, Martin continued to file dismissals in cases if, as the evidence developed or discovery suggested, a case should not be prosecuted against a particular defendant or all defendants. Often, and in the spirit of cooperation between counsel, if evidence developed that warranted dismissal of a case, communications between lawyers would result in dismissals. For example, on September 13, 2021, 3M counsel requested that a case be dismissed against 3M Company. 3M counsel was already aware that, when Martin dismisses a case, he would need time to obtain authority from the client before the dismissal, as stated in her email:

> This is the case I talked to you about today that should probably be a dismissal. I understand you need to confirm with your client but wanted to put this on your radar for consideration at your earliest convenience.

Martin responded: "Thanks [counsel], Will do." Pursuant to 3M's request, Martin dismissed the case on November 22, 2021, after obtaining client consent.

290. There were other instances of 3M ratification of the dismissal agreement. On September 13, 2021, counsel for 3M Company requested dismissal of another case and submitted a dismissal order. 3M counsel stated:

> In light of the cancelation of Plaintiff [D.B.]'s deposition this week, and in light of the representation that you all were going to dismiss all of his claims against all Defendants, please see attached agreed order of dismissal.

Martin agreed, and the case was dismissed on January 13, 2022 (without prejudice),

consistent with the dismissal practices described by 3M to the Court on May 6, 2021. These transactions demonstrate that 3M repeatedly ratified the existence of the pretrial dismissal agreements, acknowledging that dismissals of unmeritorious cases against 3M, based on product identification or clarifying medical evidence, was a routine and agreed upon procedure within this litigation.

**IMPLEMENTATION OF THE EARLY DISMISSAL REQUIREMENT IN THE SECOND GROUP OF HAMMOND-FILED CASES AND 3M'S RATIFICATION OF THAT DISMISSAL PROCEDURE**

291. Without Martin's consent or authority, Hammond eventually filed the second group of cases that Hammond had been evaluating and added Martin's name to the complaints. Those cases included *Brian Adams et al v. 3M, et al, Charles Mounts, et al v. 3M et al, Kenneth Hamilton, et al. v. 3M, et al., Jamie Banks, et al, v. 3M, Barm Combs et al v. 3M et al, Carter Yates v. 3M et al, Richard Stump v. 3M et al, Darrell Holbrok et al v. 3M, Stephen Gibson et al v. 3M et al.* By October 25, 2021, 3M removed most of these cases to federal court, and removed the other cases on April 28, 2022 and July 1, 2022, causing a stay in those proceedings that hindered the parties from implementing further dismissal agreements for those cases. Although these cases were filed without Martin's consent or authority, Martin did agree to handle the briefing relating to a remand of those cases from federal court. Martin was largely successful in having these cases remanded back to state court. On September 27, 2022, many of these cases were remanded back to state court. The other cases were remanded back on March 28, 2023. These removals caused an extensive delay in any activity in the cases. Additionally, 3M filed bankruptcy

proceedings for Aero Technologies,[1] a defendant in the case, on July 26, 2022, and the stay was not lifted until March 1, 2023. Between the removals and the bankruptcy stay, a delay between the dates of October 25, 2021 and March 1, 2023 was in effect, causing interruption in the prosecution of these cases during this period. This essentially created a year-or-more-long delay in these cases with no actions being taken between the parties because they were waiting to learn whether the cases would be remanded and the bankruptcy stay lifted.

292. Upon conclusion of the stays relating to removal and bankruptcy, when the Hammond cases had been remanded to state court, Martin immediately proposed the same early dismissal process as previously adopted in the Randy Adams pretrial agreement.

293. On December 21, 2022, Martin proposed and circulated the pretrial agreement from the Randy Adams case to all counsel of record Martin stated in the email:

> Attached is a draft from our original proposed CMO in what we have traditionally called "Group 1-Randy Adams" which was the first filed group. . . . Plaintiffs are proposing a negotiation in relation to paragraphs 1-7 only of this previously submitted order.

Paragraph 1 of the Martin proposed pretrial agreement had identical language from the Randy Adams pretrial agreement. Martin's proposed pretrial agreement stated, in part:

> Each Plaintiff will dismiss any defendant respirator manufacturer(s) whose respirators were not used by Plaintiff or against who the Plaintiff does not intend to pursue a claim.

[1] Aero Technologies was purchased by 3M, although the liability for old respirators was carved out into a holding company. The bankruptcy for Aero Technology was later deemed by the Bankruptcy Court as having been filed by 3M in bad faith.

In response to the Martin proposed pretrial agreement for all of the additional Hammond filed cases, 3M counsel responded in an email dated December 27, 2022: "the proposed schedule below for certain Plaintiffs to answer Defendants written discovery is . . . agreeable to 3M."

294. Beginning in the last quarter of 2022, 3M had initiated settlement discussions with Martin based upon a variety of mediation orders issued by the other state courts. Martin began such communications with 3M settlement counsel but was careful to abide by the pretrial agreement allowing early dismissals. Martin explained, and 3M counsel agreed, that settlement discussions would be limited only to cases which were meritorious and that cases with insufficient product identification, insufficient diagnosis of CWP, with COPD as the only injury, facial hair, or other reasons would be dismissed. Those cases would not be considered as a part of any settlement negotiation by plaintiffs or 3M. Therefore, when settlement discussion started, there was a continuing acknowledgement of the pretrial agreement for early dismissals.

295. As part of these settlement discussions, 3M requested a list of cases that could be considered for settlement. Martin sent 3M counsel a spreadsheet with those cases on September 6, 2022. Martin and 3M counsel understood that spreadsheet was a working draft that also included cases that Martin was still evaluating for early dismissals. On that day, additional dismissals were still being filed to reduce the number of total claims against 3M to 40 cases, not all of which were related to Hammond (excluding all stayed cases). These communications about dismissals continued and, on December 2, 2022, 3M counsel wrote, with regard to the working spreadsheet being exchanged:

> I noticed there are about 5 names with blank amounts. Does that mean they are probably dismissals? For example, . . . . and a few deceased plaintiffs. Have they already been dismissed or is that in the works?

Martin responded to the 3M counsel's inquiry:

> I have not decided about the ones with no demands which is due to insufficient information. . . . You guys are keeping me pretty busy right now.

3M counsel responded to Martin: "So I hear," in reference to a case that the parties were working on. As demonstrated by the above communications, 3M fully understood that settlement negotiations with Martin excluded any case that Martin would ultimately dismiss upon concluding there was insufficient evidence to proceed against 3M, for any reason. Therefore, 3M understood and ratified the procedure that any case filed with insufficient evidence to support a claim against 3M would be dismissed an not used as part of the settlement negotiations.

296. Similar to the approach taken by Martin in the Randy Adams case, Martin wanted to begin filing dismissals in the other filed cases including the *Brian Adams* case and the *Charles Mounts* case. Martin met with 3M counsel on January 9, and January 20, 2023. The central purpose of this meeting was to 1) discuss potential settlement of cases where sufficient information existed and 2) dismiss cases against 3M filed in the later filed group, in a similar fashion to the Randy Adams case. After meeting with 3M counsel on January 20, 2023, Martin confirmed he would start dismissing cases in the later filed group, to ensure that these cases could not be confused as being a part of any settlement discussions with 3M and to ensure that 3M would not be involved in incurring any cost to

defend these cases. At that time, Martin and 3M agreed that dismissals in the Brian Adams case would begin immediately.

297. In the context of the dismissal agreement, another respirator defendant, began requesting dismissals from the Brian Adams case, consistent with the procedural agreement already in place that plaintiffs would dismiss defendants whose products were not identified or who did not want to pursue their case for any other reason. Martin began filing dismissals on behalf of other defendants, and orders were entered securing those dismissals. These dismissals demonstrate that the parties were continuing to utilize the dismissal practice. On January 27, 2023, Martin began filing motions to dismiss 3M in the Brian Adams case, filing dismissals in ten cases.

298. Martin's office forwarded a courtesy copy of these dismissals to 3M counsel. In a text message sent to 3M counsel on January 30, 2023, Martin explained: "partial dismissals of the large group has started. I filed 24 (I think) today. More to come as the week progresses." 3M counsel responded on January 31, 2023: "Yes, thanks [your law partner] sent me a courtesy copy last night. Keep em coming!" Martin responded to the text message with a "thumbs up." 3M counsel's text message constituted yet another ratification by 3M of the pretrial dismissal agreement and procedure that had been followed by the parties for the preceding two years. At no time did any lawyer from 3M make any statement repudiating the existence of the dismissal agreement. In fact, 3M's message "Keep em coming!" demonstrates that 3M was in agreement with the pretrial dismissal process which was intended to reduce and eliminate any possibility that 3M would have to defend any unmeritorious or alleged "frivolous" lawsuits.

299. As the dismissals were proceeding, on February 2, 2023, 3M for the first time objected to the dismissals filed by Martin claiming that Martin had "filed claims and had no factual basis to file them" and accused Martin of unethical conduct. After making these accusations, Martin emailed 3M counsel on February 2 and requested a meeting with 3M declaring: "I am trying to help." Martin again requested a response from 3M on February 7, 2023 and offered to continue the dismissals and asked 3M "how it wished to proceed." 3M refused to respond; however, the *B. Adams* case was again stayed by the Division II Court on April 3, 2023 because of 3M's appeal to the Sixth Circuit.

300. 3M and Martin had been involved in multi-party litigation cases in the past. While parties may choose any number of ways to manage muti-party cases, all parties to this case, including 3M, elected to manage this case through an early dismissal procedure. This procedure was being followed as a matter of course for two years between the parties, without deviation. When 3M started objecting to the dismissal process, it had previously ratified, Martin reached out to open communication regarding proceeding with future dismissals. 3M refused to communicate with Martin on the subject. At this point, 3M decided to ignore the truth, and target Martin by fabricating a RICO claim.

**MARTIN WITHDRAWS FROM ALL HAMMOND FILED CASES**

301. During the course of the above-described litigation, Martin was unaware of alleged improprieties committed by Hammond in the *J. Wilson* case. Hammond did not disclose to Martin that he had previously represented plaintiff J. Wilson in a product liability claim where Hammond may have failed to timely pursue the claim, allowing limitations to run. That information was not included in the electronic case files provided

by Hammond to Martin and Givens in March – May 2020, or anytime thereafter.

302. When Martin learned of Hammond's alleged impropriety which suggested that Hammond may have concealed his malpractice because he had actually retained Wilson to represent him in a product liability case before Martin was acquainted with Hammond, Martin attempted to investigate this matter to determine 1) whether and why Hammond had concealed the information from both Martin and Givens and 2) to assess whether such alleged misconduct had occurred on any other case. Martin began investigating by requesting that Hammond make available his undisclosed paper files. Hammond refused to cooperate. When Hammond refused to cooperate with Martin's investigation, Martin had no choice but to withdraw from any representation of clients being represented by Hammond, severing his relationship with Hammond.

303. Martin notified defendants, moved to stay all Hammond-filed cases until such investigation could be completed as may be directed by the Pike Circuit Court, and moved to withdraw from all Hammond filed cases. In the *J. Wilson* case, Martin specifically reported the potential misconduct to the Honorable Keith Hall, Division II, Circuit Court.

**3M'S FABRICATION OF FRAUDULENT CLAIMS AGAINST MARTIN**

304. On February 2, 2023, two days after 3M counsel told Martin to "keep em coming!" in reference to Martin's filing of dismissals pursuant to a longstanding pretrial agreement, 3M commenced an about-face, initiating a campaign against Martin based on knowingly false and bad-faith allegations, meant to intimidate Martin, destroy his reputation and law practice, and chill his representation of coal miners' claims against 3M.

On that date, 3M filed a motion opposing Martin's dismissals, accusing Martin of breaching his ethical responsibilities for failing to investigate these claims.

305. In continuing its effort to target Martin and ruin his career, 3M asserted a grievance against Martin before the State Bar of Texas Grievance Committee, Galveston District. The allegations included in the grievance mirrored several of the allegations included in the 3M RICO claim. The grievance accused Martin of 1) not properly investigating cases, 2) prosecuting frivolous cases, 3) procuring false testimony in coal mine cases and 4) having clients file false interrogatories. Incredibly, when Martin filed his response to the 3M Grievance, 3M filed a supplemental response and accused Martin of defamation and threatened civil litigation against Martin in the context of a Bar Complaint. In this grievance, 3M cared little about the facts, or sharing the complete record of the information with the bar committee about the pretrial agreements and how matters were handled by Martin in this litigation. 3M persistently and repeatedly accused Martin of being unethical without telling the bar committee all of the facts. Despite 3M's persistent and dogged attempt to suspend Martin's law license, the 3M grievance was summarily dismissed on August 12, 2024.

306. Additionally, 3M asserted a second grievance against Martin before the Kentucky Bar and the Kentucky Supreme Court. The allegations included in the grievance mirrored several of the allegations included in the 3M RICO claim. Grievance accused Martin of 1) not properly investigating cases, 2) prosecuting frivolous cases, 3) procuring false testimony in coal mine cases and 4) having clients file false interrogatories. In the 3M Kentucky grievance, 3M again failed to share all of the facts surrounding the matters

which 3M complained. 3M doggedly told a one-sided, distorted story of Martin's handling of these cases, without providing the Kentucky Supreme Court a full and complete record of the proceedings. Despite 3M's persistent and dogged attempt to suspend Martin's law license, the 3M grievance was summarily dismissed by the Kentucky Supreme Court on July 29, 2026.

307. Notwithstanding a rejection of 3M's allegations against Martin by the Texas State Bar Grievance Committee, 3M initiated this present lawsuit against Martin and, notwithstanding the subsequent rejection of the same allegations by the Kentucky Supreme Court, has persisted in this lawsuit.

308. Based on the foregoing herein, 3M's opposition to Martin's dismissals, its complaints to the state Bars of Texas and Kentucky, and this present litigation were knowingly based on false allegations and in complete contradiction to the pretrial dismissal agreements between Martin and 3M. They were likewise in contradiction to 3M's many statements and actions, which were consistent with the agreement and upon which Martin reasonably relied to continue participating as counsel in the Kentucky cases.

309. Furthermore, even though the independent reviews of Martin's conduct by both the Texas State Bar and Kentucky Supreme Court have since found no unethical or criminal conduct, 3M has intentionally continued to proceed with this present litigation, which is based on the same allegations, ignoring the findings of these independent and well-respected authorities. 3M's conduct in ignoring the findings of the State Bars of Kentucky and Texas serve as evidence that 3M's conduct in prosecuting the present litigation is not only without merit but is being carried out intentionally, maliciously, and

without regard for the truth of the matters asserted.

310. In addition to filing two grievances against Martin, 3M also filed a Texas Rule of Civil Procedure pre-discovery claim to allegedly investigate a claim. In this proceeding, 3M wrongfully utilized and presented confidential and privileged information that was obtained in violation of the Kentucky Rules of Professional Responsibility to gain an unfair advantage over Martin. 3M ran roughshod over the rules of professional responsibility when pursuing pretrial discovery actions and grievances against Martin.

311. 3M has attempted to destroy Martin's career and reputation, have his law licenses suspended, and prevent him from assisting coal miners in exercising their legal rights in court, and 3M has in fact damaged Martin's reputation, caused him great expense in defending himself against the false allegations, and stymied meritorious plaintiff claims against 3M.

## E. CAUSES OF ACTION

### Count I - Abuse of Process

312. For purposes of the claim of abuse of process as that claim is defined by Kentucky law, Counterclaimants incorporate and re-alleges for all purposes paragraphs 1-58 and would respectfully show the Court as follows:

313. 3M willfully, maliciously, and in bad faith used process, in the form of its grievance with the Texas State Bar, not proper in the regular conduct of the proceeding.

314. 3M did so with the ulterior purposes of destroying Martin's career and reputation and preventing him from assisting coal miners in exercising their legal rights in court.

315. These actions proximately caused financial and reputational damage to Martin.

**Count II - Abuse of Process**

316. For purposes of the claim of abuse of process as that claim is defined by Kentucky law, Counterclaimants incorporate and re-alleges for all purposes paragraphs 1-62 and would respectfully show the Court as follows:

317. 3M willfully, maliciously, and in bad faith used process, in the form of its grievance with the Kentucky State Bar, not proper in the regular conduct of the proceeding.

318. 3M did so with the ulterior purposes of destroying Martin's career and reputation and preventing him from assisting coal miners in exercising their legal rights in court.

319. These actions proximately caused financial and reputational damage to Martin.

**Count III - Abuse of Process**

320. For purposes of the claim of abuse of process as that claim is defined by Kentucky law, Counterclaimants incorporate and re-alleges for all purposes paragraphs 1-66 and would respectfully show the Court as follows:

321. 3M willfully, maliciously, and in bad faith used process, in the form of its claims in this present litigation, not proper in the regular conduct of the proceeding.

322. 3M did so with the ulterior purposes of destroying Martin's career and reputation and preventing him from assisting coal miners in exercising their legal rights in court.

323. These actions proximately caused financial and reputational damage to Martin. Each one of the above listed counts of abuse of process, considered either individually or collectively, proximately caused Martin' injury and damages for which he now brings suit. Because 3M's conduct was intentional and willful, or carried out with reckless disregard for the truth, these damages also include exemplary and punitive damages.

324. WHEREFORE, Martin demands the following:

1. Damages of attorney's fees and costs incurred by Martin for defending the unjustified present litigation filed by 3M;
2. Damages of attorney's fees and costs incurred by Martin for defending the unjustified Bar grievances filed by 3M;
3. Damages for mental anguish suffered by Martin;
4. Damages incurred by Martin for harm to his reputation and reputational loss;
5. Exemplary and/or punitive damages due to 3M's malicious conduct;
6. All pre and post judgment interests, as allowed by law;
7. Any other costs and damages to which counterclaimant may be entitled under law or equity.

## III. JURY TRIAL

254. Defendant seeks a trial by jury, pursuant to the Seventh Amendment to the United States Constitution.

## IV. CONCLUSION

WHEREFORE, Defendant prays Plaintiff takes nothing by Plaintiff's suit against Defendant, that Defendant be discharged, and for such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

*/s/ Matthew R. Palmer-Ball*
Matthew R. Palmer-Ball
BRICKER GRAYDON WYATT LLP
400 W. Market Street, Suite 2000
Louisville, KY 40202
Phone: (502) 562-7141
Fax: (502) 589-0309
mpalmerball@bricker.com

/s/ *David L. Miller*
David L. Miller
Admitted *Pro Hac Vice*
Diane F. Burgess
Admitted *Pro Hac Vice*
MILLER, SCAMARDI, CARRABBA & BURGESS, P.C.
6525 Washington Avenue
Houston, Texas 77007
TEL: (713) 861-3595
FAX: (713) 861-3596
E-SERVICE: e-service@msc-lawyer.com

*Counsel for Michael B. Martin*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notice to all counsel of record.

/s/ *David L. Miller*
David L. Miller

*Counsel for Michael B. Martin*