**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**

| | |
|---|---|
| **3M COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**GLENN HAMMOND, MICHAEL B. MARTIN, and JOHN (a.k.a. "JOHNNY") GIVENS,**<br><br>Defendants. | Case No. 6:26-cv-00034-REW-MAS |

**PLAINTIFF 3M COMPANY'S MOTION UNDER RULE 12(b)(6) TO DISMISS THE COUNTERCLAIMS OF DEFENDANTS MARTIN (DE 104) AND GIVENS (DE 106)**

In a case in which Defendants are accused of filing bogus claims against 3M because, among other things, they were barred by the statute of limitations—and Defendants knew they were but plowed ahead anyway—it is more than ironic that Defendant Martin would now assert two counterclaims against 3M that are barred by the statute of limitations. Specifically, under Kentucky law the claims Martin asserts in Counterclaim Counts I and II, which allege that state bar complaints were filed against him for improper purposes, had to have been brought within one year of the filing of those state bar complaints. The problem is, the two state ethics complaints that form the basis of Martin's Counterclaims were both filed in 2023, yet Martin did not bring these counterclaims until 2026. As explained below, there are additional legal grounds to dismiss them, but that is the beginning and the end of Martin's Counterclaim Counts I and II.

As for Martin's Counterclaim Count III, which Defendant Givens parrots in the one count he asserts against 3M, Martin and Givens allege 3M's RICO claims against them are a sham abuse of process. (Hammond conspicuously does not allege this.) But this Court has already found that

3M plausibly alleges the same RICO cause of action that forms the basis of their counterclaims. Accordingly, this claim of abuse of process also fails. The Court should dismiss all counterclaims with prejudice.

**BACKGROUND**

Martin asserts three counterclaims against 3M. Each alleges abuse of process. Two are based on two state bar grievances filed against him (Martin's Counts I and II), and the other is based on the present RICO action filed by 3M (Martin's Count III). DE 104 ¶¶ 312–23. For his part, Givens asserts one counterclaim for abuse of process against 3M (Givens' Count I). Givens' Count I is nearly identical to Martin's Count III. DE 106, Counterclaim ¶¶ 17–20. Hammond did not assert a counterclaim against 3M. *See* DE 105.

Martin's Counts I and II are based on grievances filed against Martin with the state bars of Texas and Kentucky that he alleges mirrored allegations in the RICO claims in this case. DE 104 ¶¶ 305–06. According to Martin, the grievances accused him of failing to properly investigate cases, prosecuting frivolous cases, procuring false testimony, and having clients file false interrogatory answers. *Id.* Martin claims 3M filed these grievances for the purposes of destroying his career and reputation, having his law license suspended, and preventing him from representing coal miners suing 3M. *Id.* ¶¶ 311, 314, 318. Both grievances were filed more than three years ago, in 2023. *See* Ex. 1 (State Bar of Tex. Letter (Aug. 12, 2024)); Ex. 2 (Sup. Ct. of Ky. Order of Dismissal (June 29, 2026)).[1]

Givens' Count I and Martin's Count III allege that 3M filed the present RICO action to intimidate them, destroy their reputations and careers, and prevent them from assisting coal miners

[1] Martin publicly filed these records with this Court on October 28, 2026, in an underlying dust mask case. *See Brian Adams, et al. v. 3M Co.*, No. 6:26-cv-00002-REW-CJS (E.D. Ky.), DE 605-13, 605-14.

in bringing product liability suits against 3M. DE 104 ¶¶ 254, 312-323; DE 106, Counterclaim ¶¶ 1, 19. They allege further that this RICO action constitutes "sham litigation" because it is "in complete contradiction" to an alleged "pretrial dismissal agreement" between them and 3M in the underlying dust mask cases. DE 104 ¶¶ 269, 290; DE 106, Counterclaim ¶ 15. This appears to be the same alleged "dismissal agreement" Martin described in his motion to dismiss the RICO claims, which this Court denied. *See* DE 104 ¶¶ 267–300; DE 99 at 9–13. Indeed, the Court specifically found that "[t]he record, even viewed to include consideration of Martin's dismissal practices, does not foreclose 3M's theory as a matter of law." DE 99 at 18–19 n.10.

Notably, Martin's own pleading undercuts his theory. He alleges that he would not pursue claims lacking a qualifying diagnosis or product use, DE 104 ¶¶ 263, 265, yet the "dismissal program" he relies on was designed to dispose of claims *after* filing where investigation revealed no product use, no qualifying diagnosis, or a likely limitations bar. *Id.* ¶ 268; *see also id.* ¶ 155 (admitting January 2023 motions stated 43 claimants lacked a formal diagnosis). Those allegations reinforce, rather than rebut, 3M's claim that cases were filed without regard to those threshold requirements.

**LEGAL STANDARD**

The Court evaluates a counterclaim under the same standard it applies to a complaint. *Certified Flooring Installation, Inc. v. Young*, No. 2:23-cv-158-DLB-CJS, 2024 WL 2060852, at *1 (E.D. Ky. May 6, 2024). To survive a motion to dismiss for failure to state a claim, a pleading must contain facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in the nonmovant's favor, it need not accept legal conclusions or unwarranted factual inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009). Dismissal is warranted where the nonmoving party is barred from recovering on its claims as a matter of law. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 562-563).

In deciding a motion to dismiss, the Court may consider the counterclaims and "exhibits attached to the complaint, exhibits attached to the motion to dismiss briefing, items in the record, or public records … when these items 'are referred to in the [c]omplaint and are central to the claims contained therein,'" without converting the motion into one for summary judgment. *Wershe v. City of Detroit*, 112 F.4th 357, 372–73 (6th Cir. 2024) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Those materials are considered for the fact of their existence and contents (for example, what was decided, when, and in what proceeding) rather than for the truth of the matters asserted in them. *Id.* at 373. Accordingly, the Court may consider its own September 30, 2026 Opinion and Order (DE 99), as well as records relating to the state bar grievances underlying Martin's Counts I and II that Martin has filed on the public record and are attached here. Ex. 1 (State Bar of Tex. Letter (Aug. 12, 2024)); Ex. 2 (Sup. Ct. of Ky. Order of Dismissal (June 29, 2026)).

Finally, although a plaintiff generally need not plead around affirmative defenses, an affirmative defense like the statute of limitations "may be the basis for dismissal under Rule 12(b)(6) when the facts are definitively ascertainable from the pleadings and conclusively establish the affirmative defense." *Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 47 (6th Cir. 2011) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). Where, as here, the counterclaimant's own allegations and the public record conclusively establish when the challenged conduct occurred, the limitations bar can and should be decided as a matter of law.

## ARGUMENT

### I. Martin's abuse-of-process claims based on state bar grievances (Martin's Counts I and II) fail as a matter of law.

As an initial matter, 3M itself did not file any grievance against Martin with any state bar. Rather, attorneys for 3M filed these grievances in their personal capacity pursuant to their professional obligation to report known violations of the ethical rules by another lawyer.[2] Be that as it may, accepting Martin's allegation as true, the abuse-of-process claims based on those grievances fail as a matter of law for several independent reasons.

First, the claims are time-barred. In Kentucky, an action for abuse of process must be brought within one year after the cause of action accrues. KY. REV. STAT. ANN. § 413.140(1)(a); *see Hall v. City of Williamsburg*, No. 6:16-cv-304-DCR, 2017 WL 2274327, at *8 (E.D. Ky. May 24, 2017). An abuse-of-process claim accrues "at the time the conduct complained of by the plaintiff occurred, not at the termination of the underlying litigation." *Hall*, 2017 WL 2274327, at *8 (citation omitted); *see also, e.g.*, *Trent v. Trulock*, No. 1:19-cv-5-GNS-HBB, 2021 WL 848642, at *2 (W.D. Ky. Mar. 4, 2021) (holding the same and dismissing abuse-of-process claim); *Bardstown Cap. Corp. v. Seiller Waterman, LLC*, 2020 WL 3108238, at *14 (Ky. Ct. App. June 12, 2020), *rev'd on other grounds sub nom. Seiller Waterman, LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68 (Ky. 2022). Here, the conduct complained of is the filing of the grievance itself. *See* DE 104 ¶¶ 305–06 (alleging "3M asserted a grievance against Martin" before the state bars of Texas

---

[2] *See* KY. SUP. CT. R. 3.130(8.3)(a) ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, **shall** inform the Association's Bar Counsel.") (emphasis added); Tex. Disciplinary R. Pro. Conduct 8.03(a) ("Except as permitted in paragraphs (c) or (d), a lawyer having knowledge that another lawyer has committed a violation of applicable rules of professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, **shall** inform the appropriate disciplinary authority.") (emphasis added).

and Kentucky). The public record demonstrates both grievances were filed in 2023—more than one year before this action commenced. The 2026 Order of Dismissal from the Supreme Court of Kentucky lists the OBC File number as "**23**-DIS-0127," indicating the grievance was filed and the matter was opened in 2023. *See* Ex. 2 (emphasis added). The 2024 letter from the State Bar of Texas similarly lists the file number as "**2023**02227," indicating the grievance was filed and the matter was opened in 2023. *See* Ex. 1 (emphasis added). Both claims should be dismissed as time-barred.

Second, Martin fails to allege the elements of an abuse-of-process claim. Under Kentucky law, an abuse-of-process claim requires "(1) an ulterior purpose and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (citing *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998)). Both elements demand concrete facts—a collateral objective outside the suit and a definite act directed at it. Martin alleges neither.

An "ulterior purpose" is the use of process to seek some collateral advantage outside the suit itself. *See Perez v. Hyman*, No. 6:22-CV-230-REW-HAI, 2023 WL 11892924, at *4–5 (E.D. Ky. Aug. 15, 2023). Martin alleges 3M filed state bar grievances to destroy his career and reputation, have his law license suspended, and prevent him from representing coal miners suing 3M. But Martin does not plead *any* facts to support those inflammatory contentions. Such conclusory allegations cannot support an abuse-of-process claim. *See id.* at *5 ("[A]n abuse-of-process claim will not survive a motion to dismiss when it is supported only by conclusory allegations regarding the defendants' ulterior motive with no facts to support those contentions.") (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016)) (citation omitted). In any event, such allegations of punishment or retaliation, without more, do not state a claim. *Trent*, 2021

WL 848642, at *3 (holding plaintiff's abuse-of-process claim failed where he alleged only that defendants sought to punish or retaliate against him, not that they sought a collateral advantage).

The absence of any collateral objective is confirmed by the absence of any improper willful act—the conduct through which such an objective would be pursued. For an abuse-of-process claim, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required." *Simpson*, 962 S.W.2d at 394; *accord Trent*, 2021 WL 848642, at *3; *Woodcox v. United States*, No. 3:16-CV-00814-GNS, 2018 WL 1832972, at *3 (W.D. Ky. Apr. 17, 2018). But Martin alleges no such act by 3M. Rather, his abuse-of-process claims rely solely on the filing of bar complaints. Indeed, the only acts identified by Martin are the filing of a grievance and supplemental response with the State Bar of Texas and the filing of a second grievance with the State Bar of Kentucky. DE 104 ¶¶ 305–06, 313, 317. "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Simpson*, 962 S.W.2d at 394–95; *accord Trent*, 2021 WL 848642, at *3; *Woodcox*, 2018 WL 1832972, at *3. That is because the abuse-of-process tort is, at bottom, "a form of extortion," and "it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Simpson*, 962 S.W.2d at 395; *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. Ct. App. 1966), *quoted in Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 186–87 (Ky. Ct. App. 2014). No such tortious conduct is alleged here. The mere act of filing bar complaints cannot sustain the counterclaims.

Third, both of Martin's grievance-based claims are independently barred by the absolute privilege that attaches to filing an attorney disciplinary grievance. The Kentucky Supreme Court has squarely held that statements made in a bar complaint are absolutely privileged, and that the privilege "extends to any claim relating to the act of filing the bar complaint, such as abuse of

process, wrongful use of civil proceedings, or malicious prosecution." *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 605 (Ky. 2011), *overruled on other grounds by Maggard v. Kinney*, 576 S.W.3d 559, 569–70 (Ky. 2019). Because the privilege is absolute, it applies regardless of the complainant's alleged motive or the ultimate disposition of the grievance. *See id.* The attorney disciplinary system depends on the public's willingness to report suspected attorney misconduct, and allowing the subject of a grievance to sue the complainant for having filed it would chill precisely the reporting the Supreme Court's disciplinary rules are designed to encourage. Again, Martin's claims based on state bar grievances rest entirely on the act of filing complaints with the state bars of Kentucky and Texas. *See* DE 104 ¶¶ 305–06. Martin identifies no conduct other than the filing of those complaints and their consideration by the disciplinary authorities. His claims therefore fall squarely within *Botts*, and they fail as a matter of law regardless of who filed the grievances or why. Notably, Martin's Count I also flies in the face of Texas's disciplinary rules, which expressly provide that "[n]o lawsuit may be instituted against any Complainant or witness predicated upon the filing of a Grievance or participation in the attorney disciplinary and disability system." Tex. R. Disc. P. 17.09.

Fourth, the *Noerr-Pennington* doctrine independently bars both grievance-based claims. The doctrine protects petitioning of the courts and extends to state common-law claims, including abuse-of-process claims. *See, e.g.*, *Grand Cmtys., Ltd. v. Stepner*, 170 S.W.3d 411, 416 (Ky. Ct. App. 2004) (holding defendant was "shielded from liability by the *Noerr–Pennington* doctrine" on abuse-of-process and wrongful-use-of-civil-proceedings claims). The conduct Martin challenges—a request that a state disciplinary authority investigate and act on alleged attorney misconduct—is unquestionably protected petitioning activity.

## II. Martin's and Givens' abuse-of-process claims based on 3M's prosecution of this RICO action (Martin's Count III and Givens' Count I) fail as a matter of law.

Martin's and Givens' claims based on the present RICO action fail as a matter of law as well. First, Martin and Givens fail to allege the elements of an abuse-of-process claim. To adequately state an abuse-of-process claim, they were required to allege that 3M had an "ulterior purpose" in filing and prosecuting the present RICO action against them and that 3M took "[s]ome definite act or [made some] threat not authorized by the process, or aimed at an objective not legitimate in the use of the process," in so doing. *Simpson*, 962 S.W.2d at 394. But, as was the case with Martin's Counts I and II, Martin and Givens do nothing more than allege in conclusory fashion that 3M filed this action for improper purposes. Nor does either attribute any conduct to 3M aside from the filing and prosecution of the RICO claims in the normal course of litigation. Indeed, the only act identified by Martin and Givens is the presentation of 3M's "claims in this present litigation," i.e., the filing of 3M's Complaint and First Amended Complaint—claims which this Court has already held are adequately pleaded. DE 104 ¶ 321; DE 106, Counterclaim ¶ 18.

Nor can Martin and Givens fill the gap by labeling 3M's claims meritless based on the alleged pretrial dismissal program. That theory is both insufficient and wrong. It is insufficient because an "allegation that [a claim] lacks merit, even if sound, does not in and of itself equate to an 'abuse of process.'" *Perez*, 2023 WL 11892924, at *5 (quotation omitted). And it is wrong because this Court has already held that 3M plausibly alleges RICO claims notwithstanding that same dismissal-program argument. DE 99 at 18–19 n.10, 23–25. On this basis alone, Martin's Count III and Givens' Count I are doomed.

Second, Martin's and Givens' abuse-of-process claims fail for the independent reason that, as with the filing of state bar grievances, 3M's filing and prosecution of the RICO action is protected petitioning under the *Noerr-Pennington* doctrine. *See, e.g.*, *Grand Cmtys.*, 170 S.W.3d

at 416. The doctrine's narrow sham-litigation exception applies only where a suit is objectively baseless such that the petitioner lacked probable cause to institute the legal proceeding—that is, where "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (cited in DE 99 at 21–23). Probable cause requires no more than a "reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication," and its existence "precludes a finding" of sham litigation. *Id.* at 62–63. This Court has already held that 3M's First Amended Complaint plausibly states civil RICO claims and alleges criminal conduct. DE 99 at 6, 17–19. 3M's First Amended Complaint, therefore, has "a chance" of being "held valid upon adjudication." Martin's and Givens' conclusory "sham" label does not plausibly allege otherwise.

**III. The counterclaims should be dismissed with prejudice.**

Dismissal should be with prejudice because the counterclaims fail as a matter of law. Leave to amend may be denied where, as here, amendment would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *see Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024).

**CONCLUSION**

For these reasons, this Court should dismiss Martin's counterclaims (Counts I–III) and Givens' counterclaim (Count I) with prejudice.

Dated: November 11, 2026

Respectfully submitted,

*/s/ Steve Grimes*

Steve Grimes (Admitted *Pro Hac Vice*)
Sharon Desh (Admitted *Pro Hac Vice*)
Whitney I. Adams (KBA #100826)
Christina Zaldivar (Admitted *Pro Hac Vice*)
WINSTON TAYLOR LLP
300 North LaSalle Drive
Chicago, IL 60654
Ph: (312) 558-5600
Fax: (312) 558-5700
Steve.Grimes@winstontaylor.com
Sharon.Desh@winstontaylor.com
Whitney.Adams@winstontaylor.com
Christina.Zaldivar@winstontaylor.com

Benjamin C. Fultz (KBA #84398)
Gregory Scott Gowen (KBA #85408)
Robert E. Ranney (KBA #100226)
FULTZ MADDOX DICKENS PLLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202-3116
Ph: (502) 588-2000
bfultz@fmdlegal.com
sgowen@fmdlegal.com
rranney@fmdlegal.com

*Attorneys for Plaintiff 3M Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will transmit notice of electronic filing to counsel of record.

*/s/ Steve Grimes*
Steve Grimes